No. 23,292.

THE STATE OF KANSAS, ex rel. W. H. BURNETT, as County Attorney of Reno County, *Appellee,* v. THE CITY OF HUTCHINSON, *Appellant.*

SYLLABUS BY THE COURT.

QUO WARRANTO—EXTENSION OF CITY LIMITS—*Jurisdiction Long Exercised—Presumption of Regularity of Proceedings.* In 1889 a city of the second class presented a petition to the judge of the district court asking permission to extend the city limits so as to include several described tracts of land. Permission was granted to include some of the tracts and denied as to others. The city passed an ordinance including one of the tracts denied, and immediately thereafter and continuously for more than thirty years exercised unquestioned authority over that tract by giving police and fire protection, levying taxes, and building sewers. About a year after the passage of the ordinance, another ordinance was passed defining the city limits as they then existed. It included the questioned tract described in the first ordinance. *Held,* that in an action commenced by the state on the relation of the county attorney, after the lapse of thirty years, it will be presumed that the tract was legally included within the city limits, and that presumption should not be overthrown except by the most clear and convincing evidence.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed July 9, 1921. Reversed.

*W. A. Huxman,* and *Eustace Smith,* city attorneys, for the appellant; *F. Dumont Smith,* of Hutchinson, of counsel.

*W. H. Burnett,* county attorney, for the appellee; *C. M. Williams,* and *D. C. Martindell,* both of Hutchinson, of counsel.

The opinion of the court was delivered by

MARSHALL, J.: In this action, one in *quo warranto,* the plaintiff asks that the defendant, a city of the first class operating under the commission form of government, be required to show by what authority it exercises jurisdiction over the southeast quarter and the southwest quarter of section 17 in township 23 south of range 5 west in Reno county, and over that part of the northwest quarter of that section lying south of the center line of the right of way of the Atchison, Topeka & Santa Fe Railway Company, and asks that such authority be held void and in excess of the corporate powers of the city.

The principal phase of the controversy revolves around the extension of the corporate limits so as to include the southeast quarter of section 17. Four ordinances extending and defining the boundaries of the city of Hutchinson are set out in the abstract—one, No. 93, passed on February 28, 1888; another, No. 152, passed on May 1, 1889; yet another, No. 241, passed on July 24, 1890; and the last, No. 1378, passed on July 8, 1919. Ordinance No. 93 is so indefinite that the court is unable to ascertain whether or not the territory in question was embraced within it, and that ordinance will not be further considered. Ordinance No. 152 attempted to extend the corporate limits of the city so as to include the southeast quarter of section 17; but an examination of the order of the court on the petition of the city of Hutchinson, then a city of the second class (it became a city of the first class on February 21, 1911), to extend its limits, reveals that authority was not given to the city to extend its boundaries so as to include that territory. However, the evidence showed that the city of Hutchinson has been exercising authority over the southeast quarter of section 17 continuously since May 20, 1889.

That part of the northwest quarter of section 17 lying south of the Atchison, Topeka & Santa Fe railroad track was included within the city limits by ordinance No. 152. Both the ordinance and the order of the court included that territory, and it was by those proceedings included within the city limits, but the southeast quarter of section 17 was not included in the order of the court.

The next ordinance concerning this matter was No. 241, the title to which read: "An ordinance declaring and defining the entire boundary line of the line of the city as at present constituted." The ordinance read: "That hereafter the corporate limits and entire boundary of the city of Hutchinson shall be as follows." This was followed by a description of the territory which included the southeast quarter of section 17, but specifically excluded the southwest quarter of that section. When ordinance No. 241 was passed, Hutchinson was still a city of the second class. The statute then required that such a city desiring to extend its limits should present a petition to the judge of the district court—

"With proof that notice of the time and place said petition shall be

so presented has been published for three consecutive weeks in some newspaper published in said city, he shall proceed to hear testimony as to the advisability of making such addition; and upon such hearing, if he shall be satisfied that the adding of such territory to the city will be to its interest, and will cause no manifest injury to the persons owning real estate in the territory sought to be so added, he shall so find; and thereupon the city council of said city may add such territory to said city by an ordinance providing for the same." (Gen. Stat. 1889, § 884.)

It has not been shown that this section of the statute was complied with. Ordinance No. 241 defined the city limits as they existed at the time of its passage. If it correctly described the city limits at that time, the southeast quarter of section 17 must previously thereto have been included within those limits. No ordinance extending the city limits so as to include the southeast quarter of section 17 other than No. 152 appears in the record.

It might be successfully contended that the burden of proof was on the state to show that the city of Hutchinson had not extended its boundaries so as to include the southeast quarter of section 17. (*The State, ex rel., v. City of Harper,* 94 Kan. 478, 484, 146 Pac. 1169.) There is no question that the city by ordinance No. 1378 has attempted to include the southwest quarter of section 17 within the city limits. When it appeared that by ordinance No. 241 the city attempted to define its boundaries as they then existed and included the southeast quarter of section 17, and that for more than a year prior to the passage of that ordinance the city had continuously exercised authority over the territory, in the absence of any showing to the contrary a presumption arose that the ordinance correctly described the city limits, and that the southeast quarter of section 17 had been regularly included within the limits. In *The State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873, this court said:

"Where an ordinance which has been regularly passed by a city council and approved by the mayor is offered in evidence, and the validity of such ordinance depends upon the existence of one or more facts at the time of the enactment thereof, the existence, and not the nonexistence, of the necessary facts to sustain the validity of the ordinance should be presumed in the absence of evidence to the contrary." (Syl.)

In *The State, ex rel., v. City of Hutchinson,* 103 Kan. 370, 175 Pac. 147, an action brought by the state on the relation of the county attorney to determine the authority of the city of

Hutchinson over the land occupied by the reformatory, it was said:

"Under the facts stated in the opinion, the presumption that a certain ordinance adding to the territory of the defendant city was preceded by the requisite statutory preliminaries will not be permitted to be overthrown by the claims of the city to the contrary." (Syl.)

For more than thirty years the city has exercised authority over the southeast quarter of section 17—police and fire protection has been given, taxes have been levied, and sewers have been constructed, the assessments for a portion of which apparently remain unpaid and for which bonds have probably been issued. After that length of time, in the absence of proof to the contrary, it should be presumed that the city complied with the law and presented a proper petition to the judge of the district court; that an order was made authorizing the city to extend its limits so as to include that quarter section; and that subsequent to the passage of ordinance No. 152, another ordinance had been passed extending the city limits in accordance with an order of the court. That presumption should not be overthrown except by the most clear and convincing evidence. The time will soon come when cities will be unable to prove either their corporate existence or their territorial limits by proper record evidence. When that time comes, presumptions in favor of the cities must be resorted to. The following authorities support the conclusion reached: *The People v. Farnham et al.,* 35 Ill. 562; *Belknap, &c., v. City of Louisville,* 93 Ky. 444; *Sherry and another v. Gilmore and another,* 58 Wis. 324; *State, ex rel. Bridge Co., v. Columbia,* 27 S. C. 137; McQuillin's Municipal Corporations, §§ 260, 289. However, in none of the cases cited was the authority of the corporation directly questioned by the state.

With the southeast quarter included within the city limits, the southwest quarter of section 17, at the time ordinance No. 1378 was passed, was mainly within the city limits, because that quarter was bounded by the city on three sides; and the city had authority, under section 1462 of the General Statutes of 1915, to extend its corporate limits so as to include such territory. Section 1462 in part reads:

"Whenever any unplatted piece of land lies within (or mainly within) any city . . . said lands, platted or unplatted, may be added to, or taken into and made a part of such city by ordinance duly passed."

The presumption compels the court to hold that the southeast quarter of section 17 had been included within the city limits and therefore ordinance No. 1378 extended the city limits so as to include the southwest quarter of that section.

The judgment is reversed, and the trial court is directed to enter judgment for the defendant.