No. 37,662

E. F. WILSON, *Appellee*, v. CITY OF TOPEKA, KANSAS; F. J. WARREN, as Mayor; LLOYD B. SMITH, C. MADISON WILLIAMS, HARRY SNYDER and J. GLENN DAVIS, as Commissioners; and EDWIN R. JONES, as City Clerk of the City of Topeka, Shawnee County, Kansas, *Appellants*.

(212 P. 2d 218)

Opinion filed December 10, 1949.

*Frank P. Eresch*, city attorney, and *Peter F. Caldwell*, assistant city attorney, were on the briefs for the appellants.

*Edward Rooney, Jacob A. Dickinson* and *David Prager*, all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to enjoin the city of Topeka from certifying to the county clerk of Shawnee county for collection, a certain assessment made in connection with the curbing, guttering and paving of a street. The city appeals from an adverse judgment.

There is no dispute of fact. From the pleadings and a plat attached to the city's answer, we glean the following: The city initiated proceedings to pave the six hundred block on Warren avenue. While there are some differences in measurement between the length of lots and lands at the north and south boundaries, they are not material to the issues presented and will not be noticed. The figures hereafter used are a close approximation and show the point in con-

troversy. All of the lots hereafter mentioned are in Emery's Subdivision, and the unplatted land lies immediately west of the subdivision. Sixth street runs east and west and the north sides of the lots and tracts involved abut Sixth street. Warren avenue runs north and south. In the six hundred block the first north and south street east of Warren avenue is Vesper avenue, the distance between the inner street lines being 200 feet, and the block consisting of two rows of platted lots each 100 feet deep. The first north and south street west of Warren avenue is Oakley avenue and the distance between the inner street lines is about 263 feet. Immediately to the west of Warren avenue are platted lots the depth of which is approximately 97 feet and immediately to the west of these lots and directly abutting thereon are tracts of land which have not been platted into lots, the east and west measurement being approximately 166 feet. The plaintiff owned the northernmost of these tracts. In fixing the lands on which the assessment was made to cover the cost of the improvement, the city included the row of lots immediately east of Warren avenue, and which extend one-half of the distance to Vesper avenue, as well as the lots immediately west of Warren avenue, being about 97 feet deep and a strip about 34 feet wide immediately to the west, this strip being along the east side of the unplatted lands, it being the intention to include the east half of all lots and lands lying between Warren avenue and Oakley avenue.

In his petition plaintiff pleaded at length that he owned a described tract of land which had never been platted, bounded on the west by Oakley avenue, on the north by Sixth street, and on the east by Emery's subdivision, describing the geographical situation as to his land and the lots abutting Warren avenue and alleging that his land did not abut Warren avenue and that he did not have access thereto from his lands. He alleged that the city had passed an ordinance to pay for the improvements, making a special assessment of $250.89 upon the east 34 feet of his land, and that the ordinance unlawfully sought to join his unplatted land lying west and beyond the platted lots abutting Warren avenue with said platted lots and unlawfully subject his land to the special assessment, and that the special assessment was unlawful as against his land. He prayed that the city be enjoined from certifying to the county clerk the assessment against his land or from attempting to collect the assessment or any part thereof as against him or his land, and for costs.

The city's answer admitted the plaintiff's ownership of lands, pleaded the situation as to lots, tracts and streets, admitted that the special assessment was made against plaintiff's lands, alleged the land assessed was "to the middle of the block" as provided by G. S. 1935, 17-601, and that the assessment was valid. It further alleged that the area bounded by Sixth street, Oakley avenue and Warren avenue constituted a block within the meaning of the above statute. It prayed that the plaintiff take nothing.

With the issues thus joined the plaintiff filed his motion for judgment on the pleadings, and upon consideration the trial court sustained the motion and permanently enjoined the city from taking any action to collect the assessment. In due time the city perfected its appeal to this court.

Before taking up for consideration the contentions of the appellant and the response of the appellee, we take note of the fact that over the years the statutes providing for the paving of streets in different classes of cities have made varying provisions as to the real estate subject to special assessment to pay the cost thereof, and that many of our decisions with respect thereto have dealt with lands adjacent to railroad rights of way, irregular tracts, tracts not surrounded by streets and other situations not necessary to detail. Owing to diversity in geographical situations and of statutes applicable a review of these statutes and decisions would unduly extend this opinion, and when made, would hardly be decisive of the questions now involved. We note further that in 1923 these various statutes were considered and revised, the revision appearing as R. S. 1923, ch. 12, art. 6. Such amendments as have since been made to the above article do not affect the question here presented.

The portion of the above chapter presently involved is G. S. 1935, 12-601, which reads:

"Whenever any street or avenue in any city shall be graded, regraded, paved, repaved, curbed, recurbed, guttered, reguttered, macadamized, remacadamized, or otherwise improved, the cost of such improvement shall be paid by and assessed to the property on each side of said street or avenue to the middle of the block."

We are not advised as to what arguments appellee presented in the trial court to obtain judgment in his favor, but in this court he relies solely upon *Atchison, T. & S. F. Rly. Co. v. City of Hutchinson,* 130 Kan. 625, 287 Pac. 587. Reference to that opinion will disclose that, as platted, certain rectangular tracts bearing no block

numbers were, as a whole, surrounded by streets, but were crossed obliquely by the railroad right of way, and that entirely in one tract and partially in another, south of the right of way were platted numbered lots, while to the north of the right of way were other platted numbered lots. In that case the railway company contended that the lots in the tracts abutting upon the improved streets and between north and south streets and the right of way constituted blocks and should bear the cost of paving in that block. That contention, if sustained, would relieve the company from the assessment made on its land on the theory all land between the improved street and the street to the north constituted a block and that the land subject to assessment went to the middle of the block. This court accepted the company's contention and sustained the trial court's judgment in its favor.

We need not discuss whether the above cited case was soundly decided insofar as it was held that the lots south of the railway right of way constituted a block. The case would be controlling as an authority here only if we were to hold that the platted lots west of Warren avenue constituted a block. As has been indicated above, a review of our decisions will show that the definition of a block was largely dependent upon the facts of the case as measured by the statute being applied. In *Bowlus v. Iola,* 82 Kan. 774, 776, 109 Pac. 405, it was said:

"The question is, What constitutes a 'block' within the meaning of the statute?

"The appellants argue that since the ordinary method of platting is into lots and blocks the legislature must have had in mind a block made by platting, and hence that the designation given by the donor of the plat controls. The premise is sound enough, but the conclusion does not follow. According to all the dictionaries and the popular understanding everywhere a block is a portion of a city surrounded by streets. In common practice city plats are made to conform to this understanding, and the legislature had in mind blocks so constituted, and not tracts arbitrarily designated as blocks by the donor of a plat. This interpretation accounts for the difference between the method of assessing the cost of street improvements and the method of assessing the cost of alley improvements. An alley is a narrow way designed for the special accommodation of the property it reaches. Consequently the cost of improving an alley is laid upon the abutting lots or ground. Streets and avenues are designed for general public travel, and consequently the cost of improving them is extended to the center of the tracts bounded by such thoroughfares. These views find support in the opinions delivered in the following cases: *City of Ottawa v. Barney,* 10 Kan. 270; *Olsson v. City of Topeka,* 42 Kan. 709; *McGrew v. Kansas City,* 64 Kan. 61."

And see, also, *Larson v. City of Ottawa*, 101 Kan. 422, 166 Pac. 565; *Railway Co. v. City of Topeka*, 103 Kan. 897, 176 Pac. 642; *Cravens v. City of Salina*, 101 Kan. 161, 165 Pac. 801; *Watts v. City of Winfield*, 101 Kan. 470, 168 Pac. 319; and *Atchison T. & S. F. Rly. Co. v. City of Ellinwood*, 119 Kan. 218, 238 Pac. 341. From all of the above it may be said that ordinarily a block is a portion of a city surrounded by streets.

The statute quoted above is the only one applicable to the situation presented by the record before us. Under it the cost of the improvement shall be "paid by and assessed to the property on each side of said street or avenue *to the middle of the block*" (emphasis supplied). In that statute nothing is said about the component parts of the block, that is whether the lands contained therein are platted or unplatted or both. Although our attention is directed to G. S. 1935, 12-606, an examination shows it applies to unplatted lands "abutting" on the improvement or to an improvement which runs partially through platted ground and partially through unplatted ground, a situation not presented by the record before us.

Under the facts disclosed by the record we have a rectangular tract bounded on the west by Oakley avenue, on the north by Sixth street and on the east by Warren avenue, the lands enclosed constituting a single area of real estate not divided by any street or alley, even though the ownership of the components was in part by platted lots and in part by unplatted land described by metes and bounds. Under the ordinary and commonly accepted definition (see Webster's New International Dictionary, second edition, "block . . . 15") such a tract constituted a block, and we hold that such enclosed tract was a block within the purview of the statute.

It follows from what has been said that the action of the city in making the assessment was legal and proper and that the trial court erred in rendering judgment in favor of the plaintiff enjoining the city from collecting the assessment against his land. That judgment is reversed and the cause is remanded to the trial court with instructions to set aside and hold for naught the judgment appealed from and to render judgment in favor of the city.