No. 40,292

STATE OF KANSAS, ex rel. DONALD E. MARTIN, County Attorney of Wyandotte County, Kansas, *Plaintiff*, v. THE CITY OF KANSAS CITY, KANSAS, a Municipal Corporation; PAUL F. MITCHUM, Mayor-Commissioner; EARL B. SWARNER, Commissioner of Finance, Health and Public Property; JOSEPH P. REGAN, Commissioner of Boulevards, Parks and Streets; and QUINDARO TOWNSHIP, WYANDOTTE COUNTY, KANSAS, a body politic and corporate, *Defendants*.

(317 P. 2d 806)

Opinion filed November 9, 1957.

*Arthur J. Stanley, Jr.,* of Kansas City, argued the cause, and *Donald E. Martin,* of Kansas City, county attorney, and *Newell George,* of Kansas City, assistant county attorney, and *Leonard O. Thomas,* of Kansas City, were with him on the briefs for the plaintiff.

*J. W. Mahoney,* of Kansas City, argued the cause, and *Charles W. Brenneisen, David W. Carson, Joseph T. Carey* and *Francis J. Donnelly,* all of Kansas City, appeared with him on the briefs for defendant city of Kansas City.

The opinion of the court was delivered by

WERTZ, J.: This is a proceeding in the nature of quo warranto brought in the name of the state of Kansas on relation of the county attorney of Wyandotte county against the city of Kansas City, a municipal corporation, and the mayor and city commissioners thereof, to question the validity of city ordinance No. 40,220, whereby the city sought to annex a tract of land within Quindaro township. This tract consists of approximately 2300 acres adjacent to the city and is generally referred to as Fairfax Industrial District.

This court appointed Mr. Milton Zacharias of Wichita as commissioner to hear the evidence. The commissioner, in his advisory capacity (*State, ex rel., v. Zale Jewelry Co.,* 179 Kan. 628, 298 P. 2d 283), made findings of fact and conclusions of law and declared that the ordinance in question was invalid and that defendants (hereinafter referred to as the city or defendant city) should be ousted of all authority in the Fairfax area.

The facts, as found by the commissioner, are largely undisputed. Kansas City is a city of the first class with a population of less than 165,000. The Fairfax Industrial District sought to be annexed consists of approximately 2300 acres of land in Wyandotte county, situated between the northeast boundary line of the city and the Missouri river. Of the district's total perimeter of 40,790 feet, 16,040 feet form a common boundary with Kansas City. A small portion of the boundary adjoins Quindaro township in Wyandotte county, while the remainder of the perimeter is formed by the Missouri river which bends around the district. To visualize the situation more clearly, reference is made to a drawing of the entire district in relation to the city, found in *State, ex rel., v. City of Kansas City,* 169 Kan. 702, 222 P. 2d 714.

The district is an urban area with restrictive provisions in the warranty deeds granted by its developers limiting use of the land to manufacturing plants, warehouses and other types of businesses requiring railroad facilities. All but a hundred acres of the district has been sold to industrial firms and developed. Many of the employees of the industries located in Fairfax live in Kansas City. Streets in the district are constructed and connect generally to the public streets of Kansas City, with the exception of a connection across the Fairfax bridge to Platte county, Missouri. Kansas City has constructed various approaches to the district's roads. The district has its own sewers and dikes, and municipally owned utilities in Kansas City sell electricity and water to the Fairfax industries. Quindaro township and the industries within the district provide fire protection, although the Kansas City fire department has supplemented this service.

On these facts the commissioner concluded that there were substantial economic and sociological ties between the Fairfax area and Kansas City, and that "The existence of the district and the recognition thereof by the city have been mutually advantageous to both."

On June 2, 1925, a purported plat of the Fairfax Drainage District, signed by representatives of the Kansas City Industrial Land Company, early developers of the industrial district, was filed with the office of the register of deeds of Wyandotte county. The plat, expressly filed for record "for taxation purposes," embraced 1282 acres of the 2300 acres of the industrial district. It indicated the ownership of various parcels of land but did not describe the prop-

erty by blocks and lots. Conveyances within the industrial district, both before and after filing of this plat, were by metes and bounds and the land was carried on the county clerk's books by tract numbers, not by block and lot numbers. Ordinance No. 40,220, here in question, sought to incorporate the area by reference to metes and bounds, rather than by description of a subdivision platted into blocks and lots.

The city's attempt to annex a portion of the industrial district in ordinance No. 35,841, enacted April 4, 1949, was struck down by this court in *State, ex rel., v. City of Kansas City,* supra.

The statutory authority here invoked is found in G. S. 1949, 13-1602 and 13-1602a, and G. S. 1955 Supp., 13-1602a. The provisions of these statutes applicable here are identical and, in effect, set forth requirements which must be met by a city for four types of annexation. G. S. 1955 Supp., 13-1602a provides:

[1] "Whenever any land adjoining or touching the limits of any city has been subdivided into blocks and lots, or [2] whenever any unplatted piece of land lies within (or mainly within) any city, or [3] any tract not exceeding twenty acres is so situated that two-thirds of any line or boundary thereof lies upon or touches the boundary line of such city, said lands, platted or unplatted, may be added to, taken into and made a part of such city by ordinance duly passed . . . [4] In adding territory to any city, if it shall become necessary for the purpose of making the boundary line straight or harmonious, a portion of a piece of land may be taken into such city, so long as such portion of the piece taken in does not exceed twenty acres . . ."

The commissioner concluded that the statute contained four limited grants of authority and that the city failed to meet the requirements of any of them. He found that the purported plat, discussed *supra,* was not a subdivision into blocks and lots for purposes of applying the first section of the statute. He concluded that the area sought to be annexed was not within or mainly within Kansas City within the meaning of the statute and that the statutory requirements were in geographical terms and precluded consideration of economic and sociological factors. He noted that neither of the last two sections quoted, *supra,* was applicable, inasmuch as the area sought to be annexed was larger than twenty acres and was not sought for the purpose of making the city's boundary straight or harmonious. Finally, he concluded that the denial of the writ of quo warranto on grounds of hardship and inequity was not justified.

Following the announcement of the commissioner's report, plaintiff filed motions to confirm these findings and for judgment of

ouster. Defendant city filed its motion to modify certain findings of fact and conclusions of law and for additional findings, as well as a motion for a new trial. The commissioner, upon hearing the motions, sustained plaintiff's motion for judgment and overruled defendant's motions, filing his report, together with transcript of the evidence and the exhibits, with this court. The case was regularly set for argument and was heard upon the briefs and oral arguments of the parties.

In this appeal, we are confronted with the construction and interpretation of the following two provisions of G. S. 1955 Supp., 13-1602a: [1] "Whenever any land adjoining or touching the limits of any city has been subdivided into blocks and lots, or [2] whenever any unplatted piece of land lies within (or mainly within) any city, . . . said lands . . . may be . . . taken into . . . such city by ordinance duly passed."

At the outset, with relation to contentions later considered, it may be stated that the advisability of enlarging the territorial limits of the city is a legislative function which cannot be delegated to the court and if an ordinance annexing territory is attacked, the court's duty is only to determine whether under the facts the city has statutory authority to enact the ordinance. (*Ruland v. City of Augusta*, 120 Kan. 42, 242 Pac. 456; *State, ex rel., v. City of Topeka,* 175 Kan. 488, 264 P. 2d 901; *State, ex rel., v. Kansas City*, 122 Kan. 311, 252 Pac. 714.)

Cities are creations of the legislature and can exercise only the powers conferred by law; they take no power by implication and the only powers they acquire in addition to those expressly granted are those necessary to make effective the power expressly conferred. (*State, ex rel., v. City of Topeka,* supra; *State, ex rel., v. City of Topeka,* 176 Kan. 240, 270 P. 2d 270; *Kansas Power & Light Co. v. City of Great Bend,* 172 Kan. 126, 238 P. 2d 544.)

Defendant city contends that a part of the territory sought to be annexed was subdivided into blocks and lots within the meaning of the statute. Plaintiff contends that the purported plat did not meet the statutory qualifications.

It is noted that the statute appears to define platted lands as land subdivided into "blocks and lots." Whether the Fairfax Industrial District or any part was so subdivided is a crucial question when determining the validity of this plat. The facts reveal that the proffered plat is not a complete representation of the industrial

district but covers only some 1282 acres of the Fairfax Drainage District. The plat was never used for conveyance purposes. The ordinance did not attempt to annex the property as a subdivision. Transfers of property were always made by metes and bounds description. The plat was filed in 1925 and its use was specifically limited to facilitating description of acreage for taxation purposes. It discloses four roads within the entire district. The plat does not show blocks, streets and alleys which conform to those of adjoining Kansas City. It was not filed without reservation. It shows that the Kansas City Industrial Land Company did not dedicate for public use any streets, alleys or public highways, except as indicated thereon. Other forms of way were private property and were held by the company for its own use. It cannot be said that the plat complies with the provisions of G. S. 1949, 13-1413 in relation to platting and subdividing a tract of land. It further appears from the plat that there were embraced therein some fifteen tracts of land of assorted shapes which ranged in size from one to 161.38 acres and some of which were not bound by any road or street. The plat discloses no lots or blocks but only tracts by number.

We have interpreted the word "block" to mean a space in a city usually rectangular in shape, enclosed by streets and used or intended to be used for building purposes. While blocks do not have to be any particular size or shape, there are certain standards to which a lot or block must in some measure conform. It cannot be said that the tracts of the size, shape and area disclosed on the purported plat could be construed as "blocks." Courts apply to words the definitions already given them by common usage. According to all dictionaries and the popular understanding everywhere, a "block" is a portion of a city surrounded by streets. In common practice, city plats are made to conform with this understanding and the legislature had in mind blocks so constituted and not tracts arbitrarily designated as such by the donor of a plat. (*Bowlus v. Iola*, 82 Kan. 774, 109 Pac. 405; *McGrew v. Kansas City*, 64 Kan. 61, 67 Pac. 438.) For a compilation of cases on this subject, see *Berndt v. City of Ottawa*, 179 Kan. 749, 298 P. 2d 262.

We agree with our commissioner that the area sought to be annexed had not been subdivided into lots and blocks within the meaning of the statute in question.

Next, it must be decided if this unplatted land is "within or mainly within" the city so as to be annexable. There has been

little litigation on this point, but the context of the statute indicates that "within" must be equivalent to "surrounded by" the city. It would be natural, for example, to provide for annexation where the city has grown around unannexed unplatted lands.

The word "within" has been defined as "being inside the limits of." (Ballentine's Law Dictionary, 2nd Ed., p. 1367; 97 C. J. S. Within, p. 330.) The word "mainly" has been defined as "principally," "chiefly," "in the main." (38 C. J. Mainly, p. 334; 54 C. J. S. Mainly, p. 897.) If "within" means surrounded, "mainly within" a city would mean that a common perimeter of more than fifty per cent was present. To impute any other meaning would obliterate any distinction between the test for annexing platted (such as adjoining or touching) and unplatted lands. Unquestionably, the legislature intended a distinction.

As we have discussed the statute, physical connection is the test of what is "within or mainly within" a city. In the instant case, only forty per cent of Fairfax's total perimeter adjoins defendant city's boundary. Since the city cannot grow into the Missouri river and surround the district any farther, it contends (1) that the Missouri river should be counted as city boundary, or at least (2) that the city has surrounded Fairfax Industrial District as much as possible and thus Fairfax is "within or mainly within" the city. We cannot agree with either contention. It must be presumed that the legislature was completely aware of this situation and chose to make no exceptions to the plain terms of the statute. This court is not justified in adding additional words and, as a consequence, giving a new meaning to the statute. Since the legislature imposed a requirement which must read in strictly mathematical terms and since it made no exceptions, this court would be usurping legislative functions if it allowed an exception to be carved out of the statute because of the peculiar geographical situation involved in this case.

Our cases dealing with unplatted lands assume that more than one-half of the perimeter of the unplatted land sought to be annexed must have a common boundary with the city. (See *State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873; *State, ex rel., v. City of Hutchinson,* 109 Kan. 484, 207 Pac. 440; *State, ex rel., v. Kansas City,* 122 Kan. 311, 252 Pac. 714.)

Several arguments may be made to show that the statute imposes a geographical requirement, rather than an economic and sociologi-

cal one.  G. S. 1949, 12-501, *et seq.* provides a method for annexation of adjacent land by city petition to the board of county commissioners which may grant the petition if it finds that annexation is advisable.  It is clear that in determining advisability, factors of economic interaction and mutual benefit must be considered. Where the legislature intended such factors to be considered, it declared this intention specifically.  In 13-1602a, it indicated no such purpose.  Also, the holding of this court in *State, ex rel., v. City of Topeka,* 172 Kan. 745, 243 P. 2d 218, that a city of the first class with a commission form of government may annex under *either* 13-1602a *or* 12-501, *et seq.* indicates that 13-1602a does not supersede 12-501, *et seq.* and in effect provides different and alternative requirements.

Furthermore, use of an economic and sociological test would bring the court into the realm of deciding questions of the advisability or prudence of the extension of a city's boundaries, a function which this court has expressly declared to be legislative in nature. (*Ruland v. City of Augusta,* supra.)  The terms of 13-1602a are clear and definite.  They should not and cannot be enlarged or extended by this court with the aid of inferences, implication and strained interpretations.  The language of the statute cannot be enlarged beyond the ordinary meaning of its terms in order to carry into effect the general purposes for which the statute was enacted. The policy of legislative enactment is for the legislature and not for the courts.  (*State v. One Bally Coney Island No. 21011 Gaming Table,* 174 Kan. 757, 760, 258 P. 2d 225.)

We agree with our commissioner that the area sought to be annexed does not lie "within or mainly within" the city as contemplated by 13-1602a.

It is further urged by the city that the court should deny in its discretion the writ of quo warranto on the ground that it is inequitable and unjust, that a failure to so deny would work a hardship on the city.  This same contention was made in the case of *State, ex rel., v. City of Kansas City,* 169 Kan. 702, 717, 222 P. 2d 714, wherein we said:

"It is true the court has a measure of discretion in quo warranto proceedings. (*See, State, ex rel., v. Allen County Comm'rs,* 143 Kan. 898, 57 P. 2d 450, syl. 3, and the cases collected at page 902; also, *Gas Service Co. v. Consolidated Gas Utilities Corp.,* 145 Kan. 423, 65 P. 2d 584; *State, ex rel., v. Grenola Rural High School Dist.,* 157 Kan. 614, 142 P. 2d 695, and cases collected in the American Digest System, Quo Warranto, Key No. 6.)  This is a judicial dis-

cretion. It is not to be used without reason and does not authorize a court to ignore a valid applicable statute which has been promptly invoked."

In the instant case timely action was taken to question the validity of the ordinance and it would be inequitable to deny the writ under the circumstances of this case. From an examination of the entire record, we are of the opinion that the defendant city had no authority under the statute (G. S. 1955 Supp., 13-1602a) to enact the ordinance. As a result, judgment must be rendered for plaintiff, holding the ordinance in question to be invalid.

It is so ordered.

Robb, J. (dissenting): I cannot agree with the majority opinion on the proposition that this court would have to resort to *legislating* in order to rule otherwise than it is doing in this case. I think the legislature was trying to refrain from being too specific and it desired to leave the courts some discretion in determining the equities of a particular situation. When this court adopts a standard of any kind in an effort to interpret legislative intent, it is, in truth, *legislating*—under the rule of the majority opinion herein. In view of this theory, I am unable to see how the court can adopt so arbitrary a standard of computation as to say, in effect, that the words *"within (or mainly within)"* mean that the common boundary of a city and the boundary of the land to be added must constitute more than half the perimeter of the land sought to be annexed. That, in my opinion, is *legislating* just as much as any other interpretation of the legislative intent could be.

Keeping in mind what I think is meant by the legislative intent, I approach the question by considering the previous statutes on this subject.

In G. S. 1889, Volume 1, Chapter 18, Article 2, (552) Extend limits, § 8, we find the following:

"No unplatted territory of over five acres shall be taken into said city against the protest of the owner thereof, unless the same is *circumscribed* by platted territory that is taken into said city." (p. 199.) (My emphasis.)

In 1903 the legislature passed the following (G. S. 1905, Chapter 18, Article 2, § 741, Extending limits, § 9):

". . . or whenever any unplatted piece of land lies *within, or mainly within,* any city . . . said lands . . . may be added to, taken into and made a part of such city by ordinance duly passed." (p. 163.) (My emphasis.)

Then the 1907 legislature passed the following (G. S. 1909, Chapter 17, Article 21, § 1220, Annexing territory, § 353):

". . . or whenever any unplatted piece of land lies *within* (*or mainly within*) any city . . . said lands . . . may be added to, taken into and made a part of such city by ordinance duly passed." (p. 288.) (My emphasis.)

The above provision of the statute remains the same to this day (G. S. 1955 Supp. 13-1602a), as quoted in the majority opinion.

The term "circumscribed," as used in the old law, had and continues to have a definite meaning which is accepted and understood by everyone. When something is "circumscribed," it is entirely surrounded. The legislature did not continue the use of that word, which had such a connotation of definiteness, but instead substituted the word "within" whereby it must have intended something with more flexibility in its meaning than the word "circumscribed" had. The lawmakers did not stop there but also added "(*or mainly within*)" to be sure that the terminology of the statute had enough flexibility to leave something to the discretion of a court which might be called upon to determine what the legislature intended by this part of the statute. It is apparent the legislature did not intend to use "circumscribed" nor convey that meaning to the statute and to my way of interpreting the majority opinion, it says "within" means "circumscribed" and "mainly within" means "over 50% circumscribed."

I have not overlooked the use of *commas* instead of parentheses before and after the term "or mainly within" in the intervening statute (G. S. 1905, *supra*) but that does not affect my opinion in the matter. The legislature, it seems to me, intended and expected the courts to exercise great discretion in determining the applicability of this statute and it must be remembered that *all the elements* of this statute, as well as other pertinent statutes, are to be considered in arriving at that determination.

Cities are creatures of the legislature and can grow only by legislative fiat, as interpreted by the courts. For authorities and a more thorough discussion of the powers of courts to interpret legislation and to determine the legislative intent, see 5 Hatcher's Kansas Digest, rev. ed., Statutes, §§ 70, 71, 72, 73, 74, 76, 77, 89; 9 West's Kansas Digest, Statutes, §§ 174, 176, 179, 181, 183, 184, 185, 187, 190, 199, 205, 206, 212.

I can only conclude from the above authorities and my own interpretation of the statute that the majority opinion places too strict an interpretation on the statue in question. The Fairfax Industrial District is *"mainly within"* the city of Kansas City, Kansas, and the city had the power, under G. S. 1955 Supp 13-1602a to pass the ordinance that it did and I would enter judgment in favor of defendants for costs.

FATZER, J., concurs in the foregoing dissenting opinion.

HALL, J., (dissenting): I am unable to concur in the opinion of the majority that the Fairfax Industrial District does not lie "within or mainly within" the city of Kansas City. I believe that it does and that ordinance 40,220 is valid as a proper exercise of the city's authority to annex under G. S. 1955 Supp., 13-1602a.

I agree with paragraphs 1, 2, and 8 of the Syllabus of the opinion that the advisability of enlarging the territorial limits of the city, and providing therefor, is a legislative function which cannot be delegated to a court; that cities are creatures of the legislature and can exercise only the power conferred by law; and that courts should not judicially legislate so as to broaden the plain letter of a statute.

I disagree with the result of the majority opinion because its interpretations of the annexation statute in the case at bar (13-1602a) are not a proper application of these rules of law.

In determining whether or not the Fairfax Industrial District had been subdivided into "blocks and lots" so as to come within the statute, the majority opinion applies the test stated in Syllabus 4 that the word "block" as used in 13-1602a ordinarily refers to a space rectangular in shape, enclosed by streets and used or intended to be used for building purposes, citing in support thereof *Bowlus v. Iola,* 82 Kan. 774, 109 Pac. 405; *McGrew v. Kansas City,* 64 Kan. 61, 67 Pac. 438; *Berndt v. City of Ottawa,* 179 Kan. 749, 298 P. 2d 262.

These cases are all interpretations of G. S. 1949, Sections 12-601 and 12-602, otherwise known as the general paving law. These sections provide that assessments for pavement shall be made on the property to the middle of the "block." In the early interpretations of the word "block" under this statute nothing was said about them being rectangular or used or intended to be used for building. In the Bowlus case, Justice Burch said:

". . . According to all the dictionaries and the popular understanding everywhere a block is a portion of a city surrounded by streets. In common practice city plats are made to conform to this understanding, and the legislature had in mind blocks so constituted, and not tracts arbitrarily designated as blocks by the donor of a plat. . . ." (p. 776.)

In the later cases, particularly *Berndt v. City of Ottawa*, supra, the court defined the word "block" as follows:

"Ordinarily the word 'block' as used in G. S. 1949, 12-601 and 12-602, refers to a space in a city, usually rectangular, enclosed by streets and used or intended for buildings (following *Wilson v. City of Topeka*, 168 Kan. 236, 212 P. 2d 218)."

Syllabus 4 here follows the definition in the Berndt case.

These decisions are neither persuasive nor *stare decisis* of the definition of "lots and blocks" as the term is used in the annexation statute G. S. 1955 Supp., 13-1602a.

The annexation statute simply provides that whenever any land adjoining or touching the limits of any city has been subdivided into "blocks and lots" it may be annexed. The standards of the above cases are impractical of application to the statute here. The Bowlus case describes a "block" as a portion of a city surrounded by streets. This is a fair test under the paving assessment law but can hardly apply under the annexation law where the "block" to be annexed is not yet a portion of the city. Likewise, the same impractical result follows under the Berndt definition. The annexation statute says nothing about "blocks" being "rectangular in shape, enclosed by streets and used or intended to be used for building purposes." It is understandable that this kind of a definition may be helpful in the application of the paving law but it is totally beyond the scope and requirements of the annexation statute. Contrary to the position of the majority opinion there is nothing in the statute which requires certain arbitrary standards of common usage to which a "block or lot" must in some measure conform. There is also no basis whatsoever to place the annexation statute in *pari materia* with the tax statutes G. S. 1949, 79-405, 79-406 and 79-407, under which this plat was allegedly filed, the platting statute G. S. 1949, 13-1413, or for that matter any other statute.

As a matter of fact in these times land is being platted on more esthetic lines than ever before. "Blocks and lots" may be of all sizes, shapes and descriptions. Many "blocks" may be dedicated for parks or recreational areas and may lie in between rows of

houses and not be enclosed by streets or alleys. Are they not to be considered "blocks and lots" within the statute because they fail to comply with an arbitrary standard of common usage?

Section 13-1602a provides in clear and unambiguous language that land adjacent or touching the limits of any city which has been subdivided into "lots and blocks" may be annexed. We should not judicially change the plain words of the statute by adding descriptive adjectives of limitation such as we have done here.

In the instant case it is doubtful even under more liberal interpretation that the Fairfax Industrial District has been subdivided into "blocks and lots" to come within the purview of the statute but the law of this case goes far beyond the determination of this fact and as stated in Syllabus 4 is a serious limitation to annexation not intended by the legislature.

In determining whether or not the Fairfax Industrial District is "within or mainly within" the city of Kansas City the majority opinion first defines the meaning of the words "within and mainly within."

The court then states that:

"Our cases dealing with unplatted lands assume that more than one-half of the perimeter of the unplatted land sought to be annexed must have a common boundary with the city. . . ."

citing in support thereof, *State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873; *State, ex rel., v. City of Hutchinson,* 109 Kan. 484, 207 Pac. 440; *State, ex rel., v. Kansas City,* 122 Kan. 311, 252 Pac. 714.

This rule is then applied and inasmuch as less than one-half of the total perimeter of the Fairfax Industrial District lies adjacent to the city the opinion concludes that the area is not "within or mainly within" the city.

Under the cases cited the assumption that more than one-half of the perimeter of unplatted land must have a common boundary with the city is unwarranted. These cases turn on other points. In fact the precise question of the meaning of "within or mainly within" has never been decided in this state. This is a case of first impression.

It will be noted that the definitions of the words "mainly" and "within" in the majority opinion are based upon the general references of Ballentine's Law Dictionary, Corpus Juris, and Corpus Juris Secundum. Surprising as it may seem the words really have not been defined in relation to annexation statutes. They are defined in *McGill v. Baumgart,* 233 Wis. 86, 288 N. W. 799, but this

definition adds nothing additional to the definitions in the general reference books.

The point is that in determining the interpretation and application of the words "within and mainly within" this court is not bound by any precedent and has the freedom of decision such a situation implies. The question was raised in *State, ex rel., v. City of Kansas City,* 169 Kan. 702, 222 P. 2d 714, but the court did not decide it.

"Defendant next argues that Fairfax Industrial District is a proper subject of annexation and that it lies within or mostly within the city. The contention is not important here. The ordinance in question did not attempt to annex Fairfax Industrial District to the city. It attempted to annex only a part of Fairfax Industrial District, the part specifically described in the ordinance. While there was much evidence received by our commissioner pertaining to the Fairfax Industrial District as a whole its only purpose was to show the general situation and the history of the development of the district. These are the only purposes for which such evidence can be considered here. We must necessarily limit our decision to the authority of the city to annex the particular property described in the ordinance, in view of our statute (G. S. 1935, 13-1602) under which the city acted." (p. 717.)

Here again Section 13-1602a provides in clear and unambiguous language that unplatted land lying "within or mainly within" a city may be annexed. We should not judicially substitute the fixed mathematical requirement of "more than one-half the perimeter" for the words "within or mainly within." This too is a limitation on annexation not intended by the legislature.

There is nothing difficult in either the definition or application of the words "within and mainly within." Under the definitions of the commonly accepted reference books set out in the majority opinion the application must necessarily depend upon the facts and circumstances of the given case. It should not depend alone on a mathematical calculation. Following the rules of law laid down in paragraphs 1, 2, and 8 of the Syllabus this court has a duty to inquire as to the authority of the city to act. Beyond that we should not substitute our judgment on the facts and circumstances for that of the city in the application of the words "within and mainly within" in the absence of a clear abuse of discretion.

We certainly should not require more of cities under this statute than we require in others. The test of "arbitrary, capricious and unreasonable" is an almost universal one in the review of acts of public bodies.

In the instant case the city certainly had authority to act under the statute.

The Fairfax Industrial District is bounded by the Missouri River which winds around the district on the north and east, by a small portion of Quindaro Township to the west, and the balance by the city.

Under a total perimeter test as applied by the majority, the city, of course, does not occupy fifty percent of the total boundary, but there are other facts and circumstances which the city considered in enacting the ordinance. Most important of all is the fact that the city has reached *its greatest possible surroundment* of the area. The Fairfax Industrial District cannot grow into the river nor can it extend itself into Missouri. The river which forms the state boundary presents a natural and jurisdictional barrier both to the district and to the city. The city actually occupies 24,040 feet of the possible 24,590 feet of non-river boundary. This comes to ninety-six percent. For this and other reasons the city decided the district is "mainly within" the city. Can we say such a judgment is unreasonable and a clear abuse of discretion? I think not.

There is no basis to presume the legislature was aware of this situation and intended that special statutes would be necessary to achieve annexation. The same problem will arise whenever any city attempts to annex land which is contiguous to it and which borders to a state boundary. There is no reasonable ground for presuming that the legislature intended to exclude *any* case involving unplatted lands from the purview of the statute, or that it intended specifically to exclude a case involving a state boundary.

The situation differs from the one in which the legislature did make special provision for annexation of areas across a county line from a city. There, statutory authority was provided to allow a city to go *beyond* a county boundary and annex land in an adjacent county. Where state boundaries are concerned, the city can never do more than annex *up to* the boundary. No statutory provision could effect a contrary result.

It is more reasonable to presume that the legislature intended the statute to provide for every case involving unplatted lands. Whether or not the legislature contemplated the instant case or cases like it, it is within the accepted scope of the judicial function to apply a general statute to a specific case. In doing so, the court does not legislate.

FATZER, J., concurs in the foregoing dissent.