No. 43,019

Leslie O. Mai (Plaintiff), James M. Burrell and Clara M. Burrell, his wife, and Philip I. Hammer (Substituted as an additional plaintiff in the court below), *Appellants*, v. City of Topeka, Kansas, et al., *Appellees*.

(383 P. 2d 553)

Opinion filed July 10, 1963.

*Jacob A. Dickinson* and *Ralph E. Skoog*, both of Topeka, argued the cause, and *Sam A. Crow*, *Bill G. Honeyman* and *Hart Workmen*, all of Topeka, were with them on the briefs for the appellants.

*C. Bruce Works*, of Topeka, argued the cause, and *John W. Lewis*, *William B. McCormick*, *Donald S. Simons* and *William L. Harris*, *Jr.*, all of Topeka, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Parker, C. J.: This was an action by landowners to enjoin the City of Topeka and designated officials from certifying to the County Clerk of Shawnee County for collection, or attempting to collect, certain assessments made against their real estate in connection with the curbing, guttering, and paving of a street. The plaintiffs have appealed from a judgment denying them injunctive relief.

The claims of the parties are set forth in the pleadings, pertinent portions of which will be quoted, or stated in summarized fashion, for informative purposes.

The petition, after recital of formal matters, including the status of the parties, reads:

"That the plaintiffs and other similarly situated are all owners of tracts of land situated in the City of Topeka, Shawnee County, Kansas, and are all affected by 1956 Paving Project No. 3, Section 2, of the City of Topeka for the paving of Knollwood Drive from Mulvane Street to the east line of Block G of Knollwood; that said tracts of land owned by the plaintiffs and others similarly situated are not now and never have been platted; that said tracts . . . are not now and never have been within any block within the City . . ., as contemplated by G. S. 1949, 12-601; and that the paving of said Knollwood Drive is an improvement running partially through platted ground and partially through unplatted ground and the platted lots abutting on said street are 123 feet in depth.

"That on the 18th day of March, 1958, the Board of Commissioners of the City of Topeka passed Ordinance No. 9285 which was approved on the same date by the defendant, George G. Schnellbacher, as Mayor of the City of Topeka, which ordinance was first published in The Topeka Daily Capital on the 20th day of March, 1958. That by the terms of said ordinance there is purported to be levied a special assessment upon the tracts of unplatted land owned by the plaintiffs and others similarly situated for curbing, guttering and/or paving of Knollwood Drive from Mulvane Street to the east line of Block G of Knollwood which ordinance is hereby specifically referred to and made a part hereof as fully as if set out herein. That by the terms of said ordinance there is levied or purported to be levied a special assessment on the platted lots abutting Knollwood Drive for such curbing, guttering and/or paving to said platted depth of 123 feet and that said Ordinance No. 9285 unlawfully seeks and purports to assess the unplatted tracts of land of the plaintiffs and others similarly situated through which said street runs to a depth of 309.2 feet and unlawfully subjects said unplatted tracts of land to such purported special assessments for the curbing, guttering and/or paving of Knollwood Drive from Mulvane Street to the east line of Block G of Knollwood and that said purported special assessment or levy is unlawful as against the real estate owned by the plaintiffs . . . , for the following reasons, to-wit:

"(1) That said purported special assessments, by the defendants, were purportedly made under the authority of G. S. 1949, 12-601, when the law and in fact, said improvement assessments could not lawfully be made under the terms of G. S. 1949, 12-601.

"(2) That the tracts of land owned by plaintiffs and others similarly situated could only be assessed lawfully for said improvement under the terms of G. S. 1949, 12-606.

"(3) That the appraisement made and used by the defendants as a basis for said special assessments was made in an unreasonable, arbitrary and capricious manner and without due regard for the rights of the plaintiffs. . . ."

The relief sought by the plaintiffs in the prayer of the petition has been previously noted.

In their answer defendants admitted their elective and appointive status and the execution and publication of the Ordinance in ques-

tion, as charged in the petition, and then denied generally all other allegations of that pleading.

With issues joined as related the case was tried by the district court which held, in substance, that Ordinance 9285 and the assessments levied under its terms on plaintiffs' land were valid and lawful, and then rendered the judgment heretofore indicated. Thereupon, and after overruling of their motion for a new trial, plaintiffs perfected the instant appeal wherein, under proper specifications of error, they are entitled to appellate review of questions to which we shall presently refer.

The record discloses little, if any, dispute as to the facts. However, it is recognized what has been said up to this point does not suffice to give readers of this opinion a proper understanding of the factual picture required to dispose of the decisive issues involved. Therefore, based on what we are able to glean from the record and the statement of facts made by counsel in their respective briefs, we shall proceed to amplify that picture, even though it involves some repetition.

On March 18, 1958, at a special meeting the City Commission approved the report of appraisers regarding 1956 Paving Project No. 3, Section No. 2, in the City of Topeka, which had been initiated by Ordinance No. 9285. Included in the project and report was the improving by grading, curbing and paving of Knollwood Drive from the west line of Burlingame Road to the east line of MacVicar Avenue, except for existing pavement along the north side of Block G in Knollwood.

Portions of the project here involved are limited to property abutting on the north and south sides of Knollwood Drive, lying between Mulvane Street and Old Trail Drive.

At the time assessments were levied, under the terms of the Ordinance in question appellants' land consisted of an unplatted tract of what appears to have been raw land. The dimensions of this land were 1152 feet, running east and west between Mulvane Street and Old Trail Drive, and 618.45 feet, running north and south between Knollwood Drive and Twenty-ninth Street. The entire tract consisted of approximately sixteen and one-half acres.

Appellants contend the land just described was unplatted, both as to Lots and Blocks. Appellees concede such land had never been platted into Lots and do not deny appellants' claim it had never been platted into Blocks. However, appellees do claim such land

is a "Block," within the meaning of G. S. 1949, 12-601. So far as this claim is concerned it is interesting to note appellees must stand or fall on the premise that, as a matter of law, such land was a "Block" by reason of the fact that at the time of the involved appraisal and assessments it was surrounded by four streets, lying within the City, namely, Knollwood Drive on the north, Mulvane Street on the east, Twenty-ninth Street on the south, and Old Trail Drive on the west.

Further facts, which may be said to be wholly uncontroverted, can be stated thus.

The assessments levied on appellants' land were to a depth of 309.225 feet on the south side of Knollwood Drive between Old Trail Drive and Mulvane Street. The assessments levied on the land to the north side of Knollwood Drive, which land was located immediately across the street from appellants' land and had been platted into Blocks and Lots prior to the time of the appraisal and assessments, were to a depth of 123 feet, i. e., the middle of Block B, Knollwood Subdivision.

The appellees proceeded in the appraisal and assessments under the provisions of G. S. 1949, 12-601, and treated the entire tract of appellants' land, bounded by Knollwood Drive, Twenty-ninth Street, Mulvane Street, and Old Trail Drive, as a "Block" for assessment purposes, although the tract consisted of approximately eight ordinary city blocks.

Appellants timely filed this action in the district court on April 18, 1958. Trial was commenced in the district court on August 31, 1961. In the interim subsequent purchasers of parcels of appellants' land were substituted as parties plaintiff. Judgment was rendered on November 3, 1961, for appellees on grounds that at the time the assessments in question were levied the area involved, i. e., the sixteen and one-half acre tract, was a "Block."

We will first note the pertinent statutes involved. G. S. 1949, 12-601, provides:

"Whenever any street or avenue in any city shall be graded, regraded, paved, repaved, curbed, recurbed, guttered, reguttered, macadamized, remacadamized, or otherwise improved, the cost of such improvement shall be paid by and assessed to the property on each side of said street or avenue to the middle of the block."

G. S. 1949, 12-606, reads:

"Where any of the improvements specified in this act are to be made upon streets or avenues, and the pieces of land abutting on such improvement shall

not be divided into lots or blocks, the assessments for such improvements shall be made on the piece or pieces of ground adjoining such improvement or through which the same may be located to the distance of 300 feet from the street or avenue upon which such improvements are made extending along the street or avenue the distance improved or to be improved: *Provided,* That where the street or avenue to be improved runs partially through platted ground and partially through unplatted ground, the assessments for the payment of the cost of the construction of the improvement on the street or avenue running through the unplatted ground shall be levied on the lots and pieces of ground along said street or avenue on either side thereof, to the same distance on either side of said street or avenue as the levy is made where the street or avenue to be improved runs through platted ground: . . ."

The all-decisive question presented by the record is whether the tract under consideration was a "Block," within the meaning of G. S. 1949, 12-601, or whether it was "unplatted ground," within the meaning of the proviso contained in G. S. 1949, 12-606.

What constitutes a "Block" as used in special assessment statutes is not capable of exact definition. The answer must be found in the facts and circumstances of each particular case measured by the statute under consideration. The previous decisions of this court are not too helpful in the case at bar because most of them are predicated upon different factual situations and dissimilar statutes.

In *Berndt v. City of Ottawa,* 179 Kan. 749, 298 P. 2d 262, this court held:

"Ordinarily the word 'block' as used in G. S. 1949, 12-601 and 12-602, refers to a space in a city, usually rectangular, enclosed by streets and used or intended for buildings (following *Wilson v. City of Topeka,* 168 Kan. 236, 212 P. 2d 218)." (Syl. ¶ 1.)

The foregoing general definition has many exceptions. In *State, ex rel., v. City of Kansas City,* 181 Kan. 870, 317 P. 2d 806, it is said:

". . . While blocks do not have to be any particular size or shape, there are certain standards to which a lot or block must in some measure conform. It cannot be said that the tracts of the size, shape and area disclosed on the purported plat could be construed as 'blocks.' Courts apply to words the definitions already given them by common usage. . . ." (p. 875.)

The fact that a tract may vary in size and shape from other blocks in the city does not prevent its designation as a block. (See *Railway Co. v. City of Topeka,* 103 Kan. 897, 176 Pac. 642; and *Atchison, T. & S. F. Rly. Co. v. City of Kingman,* 122 Kan. 504, 252 Pac. 220.) However, the size of the tract must be given consideration or a ridiculous and unfair result will be reached. A tract should not be

considered as a block, simply because it is surrounded by streets, where it is of sufficient size that it is evident from the development in the area that it will have to be multisected by streets into numerous blocks for the purpose of platting building sites.

In *McGrew v. Kansas City*, 64 Kan. 61, 67 Pac. 438, it is said:

"The claim that a tract of unplatted land, of whatever extent, if surrounded by streets, is a block, and is deemed to be benefited to the center of the tract, although not abutting on the improvement, is not reasonable and does not accord with the manifest purpose of the legislature. Frequently large tracts of unplatted and unoccupied lands lie within the exterior limits of cities, and are surrounded by public highways. If an eighty-acre tract were so situated, would it be contended that it constituted a block within the legislative intention, or that an improvement of a street through one end of the tract could be regarded as a special benefit to the center of the tract, one-fourth of a mile away? It would hardly be argued that the legislature contemplated that one acre of such tract which did not adjoin the improved street, but was in fact eighty rods distant from it, should be taxed for the improvement." (p. 64.)

The applicable rule in the instant case is well-stated in *Union Pac. Rld. Co. v. City of Russell*, 119 Kan. 350, 240 Pac. 264, which reads:

". . . The cases cited in which a general definition of a block is given as a square surrounded by streets is not to be strictly applied in exceptional cases where under the general scheme of platting a platted tract is substantially a block and has been so designated on the plat. In 1 Page & Jones on Taxation by Assessment, in section 628, it is said:

" 'In doubtful cases the court has some discretion in determining what a square is. A tract of land which was the size of two ordinary city squares, which was surrounded by streets and opposite the middle of which on either side a street had been opened, but did not extend through the large tract in question, was treated as a consisting of two squares by regarding such street as opened so as to extend through such tract.'

"In *Sivyer & Sons Co. v. City of Spokane*, 77 Wash. 282, the court considered the question of the meaning of a block as used in an assessment statute, and remarked:

" 'Obviously, the legislature never intended to use the word "block" in the broad sense of a square included by four streets, how far soever apart and how large soever the resulting square, but did intend the square included by four streets as located by the system or scheme of streets prevailing generally in the environing city plat in which the given assessment district may be located. By "platted property" is evidently intended lands so included by the regularly placed intersecting streets and by "unplatted property" is intended lands not so included. Fractional blocks and irregular blocks produced by interference with the general street scheme, by the topography of the ground, by joining up with other additions, or by diagonal streets, would, of course, be treated as platted property.' (p. 286. See, also, *Missouri, K. and T. Ry. Co. v. City of Tulsa*, 45 Okla. 382; *Holt v. Figg*, 123 Ky. 167.)" (pp. 353, 354.)

In passing, it is interesting to note that the foregoing quotation from *Sivyer & Sons Co. v. City of Spokane* (Wash.), supra, was subsequently requoted by this court in *Atchison, T. & S. F. Rly. Co. v. City of Kingman,* 122 Kan. 504, 507, 252 Pac. 220.

The legislature did not contemplate or intend that a tract be considered as a block for special assessment purposes regardless of its size and surrounding conditions. It was the intention of the legislature to eliminate inequalities, not to create new ones.

See, also, *Watts v. City of Winfield,* 101 Kan. 470, 168 Pac. 319, where it is said:

". . . As the blocks affected may be of different sizes, it follows that at one place the line marking the limit of the taxed district may lie farther from the improved street than at another. But this is only such an incidental inequality as may be expected from the application of any general rule designed to give approximately just results, where there is no possible standard by which exact equality may be assured. The statute fixes 300 feet as the distance for which unplatted ground abutting on an improved street shall be required to contribute to the cost of the improvement, but adds the proviso that where a different limit is fixed for adjacent platted property by the center-of-the-block rule, that limit shall control as to the unplatted ground. The manifest purpose of the proviso was to eliminate an existing source of probable injustice and inequality, not to create a new one. The draftsman doubtless had in mind the likelihood that the unplatted land would in time be platted according to the plan prevailing upon the same side of the street, or the presumption that the unplatted property would ultimately derive about the same benefit from the improvement as property already platted, which was similarly situated. . . .

"We regard as untenable the suggestion that the assessed district might be made to include the west half of the entire tract bounded by Andrews and Colorado streets and Fourth and Fifth avenues. This would be to treat that tract as a block of platted land. Under exceptional circumstances a parcel of land in the heart of a city, bounded by streets, has been held to constitute a 'block' for the purpose of the application of the center-of-the-block rule, although no plat had ever been filed designating it as such (*Railway Co. v. City of Chanute,* 95 Kan. 161, 147 Pac. 836); but it does not follow that every piece of ground surrounded by streets is to be so considered, and here no exceptional circumstances are shown such as to require that treatment." (p. 475.)

The size of the tract here in controversy is out of all proportion to the platted blocks directly to the north and the development plan prevailing in the area. It could not be anticipated that such tract would be developed as a single block without the necessity of additional streets.

In the face of the facts of record we are constrained to hold that the tract involved in this case is not a "Block" as the word is used in G. S. 1949, 12-601. To sustain any contention to the contrary

would result in an unfair, inequitable and unjust assessment. It follows such tract should have been assessed as unplatted ground in conformity with the provisions of the heretofore quoted proviso of G. S. 1949, 12-606. We so held in a case involving similar, if not wholly indistinguishable, conditions and circumstances. See *Mount Hope Cemetery Co. v. City of Topeka,* 190 Kan. 702, 378 P. 2d 30, where, in considering the City's appeal from an order and judgment of the trial court holding that the City failed to follow statutory provisions of G. S. 1949, 12-606, in levying special assessments against the Cemetery property to a depth of 300 feet while on property on the immediate opposite side of the street it levied assessments to a lesser depth, this court affirmed that portion of the trial court's judgment when it said and held:

"We now turn to the second question presented which arises out of the appeal of the city wherein the trial court held that the special assessments were unequal, unlawful, arbitrary, capricious, and void. Under the first proviso of G. S. 1949, 12-606, above quoted, to the effect that the levy shall be made to the same distance on either side of the 'said street or avenue,' we think the trial court's finding was correct." (p. 708.)

What has been heretofore considered and discussed in this opinion requires that the judgment be reversed with directions to the district court to enjoin the involved special assessments as levied, and it is so ordered.