No. 26,979.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, *Plaintiff*, v. THE CITY OF KANSAS CITY, W. W. GORDON, as Mayor; H. F. SCHAIBLE, A. H. STRICKLAND, C. D. DARNALL and F. LE ROY COOKE, as Commissioners, etc., *Defendants*.

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS —*Authority to Annex Territory*—*"Piece of Land."* The legislature gave its own definition to the words "piece of land," in R. S. 13-1602, as being one which "lies within (or mainly within) any city." It does not depend upon ownership. It may be in one tract with one owner, or it may be in many tracts with as many owners.

2. SAME—*Authority to Annex Territory — Platted and Unplatted Land Under Same Ordinance.* When the "piece of land" (R. S. 13-1602) is in part platted and in part unplatted, and so situated that the platted part can be taken into the city by ordinance and the unplatted part by another ordinance, there is no legal objection to taking the entire "piece of land" into the city by one ordinance.

Original proceeding in quo warranto. Opinion filed January 8, 1927. Judgment for defendants.

*Charles B. Griffith,* attorney-general, and *W. C. Ralston,* assistant attorney-general, for the plaintiff; *Eugene McQuillin,* of St. Louis, Mo., *H. J. Smith, Henry D. Ashley, H. L. McCune* and *Roy T. Osborn,* all of Kansas City, Mo., of counsel.

*William Drennan, Willard M. Benton* and *Joseph A. Lynch,* all of Kansas City, for the defendants.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in quo warranto which questions the authority of the city of Kansas City, Kan., to enact a certain ordinance extending the corporate limits of the city. After issues were joined this court appointed H. W. Arant, Esq., of Lawrence, commissioner to hear the evidence, make findings of fact and conclusions of law, and to report to this court. This has been done and the case has been briefed and argued and submitted for decision. Although the commissioner's findings and conclusions are advisory to this court rather than binding (*State, ex rel., v. Barker,* 119 Kan. 853, 858, 241 Pac. 253), we print the findings and conclusions in order better to understand the facts and the reasons

Municipal Corporations, 28 Cyc. pp. 191 n. 76, 201 n. 36; 19 R. C. L. 732, 735.

which prompted the commissioner's conclusions.   They are as follows:

"FINDINGS OF FACT.

"The territory referred to in Ordinance No. 23107, marked Exhibit 'A' and attached to defendant's amended answer, includes approximately 640 acres, through which from northwest to southeast flows the Kaw river, a navigable stream.  Approximately one-third of said territory is on the north side of said river and two-thirds on the south side thereof, and approximately one-sixth of said territory lies within the harbor lines of said river.  The annexation of the said territory owned by several different persons or corporations, was against the wishes and over the protest of a large majority of the owners of the lands included therein.  The territory referred to is, in the main, unplatted, but it includes two small pieces of platted land, namely McAlpin and Riverside additions.  The boundary of the territory annexed coincides on three sides and a small part of the fourth with the city limits of the City of Kansas City, Kan., as they were prior to the passage of said ordinance.  The evidence shows the length of the boundary of the territory taken in to be 23,-000 feet.  The length of so much of the boundary of the territory taken in as coincides with the boundary of the city prior to the annexation, is 17,400 feet.  Stated otherwise the length of the part of the boundary of the territory annexed that coincides with the old city limits is approximately three times the length of that part of the boundary of the territory annexed that does not coincide.  Scattered over the territory annexed are 45 residences or small business buildings.  With the exception of the land owned by the Sinclair Refining Company, 152 acres and approximately one-fourth of the entire territory, and that owned by the United Zinc and Chemical Company, 102 acres and approximately one-sixth of the same, the said land is either vacant or principally devoted to truck farming.  Because, however, of the proximity of the said land to Kansas City, Kan., and Kansas City, Mo., it is well adapted to industrial purposes and has a value for the purpose of industrial sites far above its value for farming purposes, to wit, $1,500 to $2,000 an acre.

"The body of land in question is bounded on the north by Muncie road, on the south by the Argentine railway and switch tracks of the Atchison, Topeka & Santa Fe Railway Company, on the west by Carlisle road and vacant lands and on the east by approximately a half mile of vacant land annexed to the city of Kansas City, Kan., about sixteen years ago, upon which, in the meantime, there has been little improvement or construction of buildings or laying out of streets.  The land annexed is traversed by no streets or alleys, except a county road extending Kansas avenue west, nor are any streets or alleys on it except those shown on the platted additions before referred that compose a small part of said land.  Most of the houses on said land are along its northerly side, its easterly side north of the Kaw river and along the Daniel Wilson county road toward the west side of said land, a part of said land belonging to and being occupied by employees of the United Zinc and Chemical Company.  Upon said land there are no churches or school buildings, but there are two or three small country stores and a small restaurant.

State, ex rel., v. Kansas City.

"It appears that the United Zinc and Chemical Company and the Sinclair Refining Company located their plants with a view to operating outside of the city limits. Being within the city limits appears, however, to impose no burdens or handicaps to these companies except the possible burden of increased taxation. It further appears that these companies constructed their plants with a view to each being a self-sufficient unit as regards sewage, water, light, fire and police protection. Each now uses in its business some city water, though the amount of such water used is small in comparison with the total amount used, each using the majority of its water from its own wells. Each is equipped with fire-fighting apparatus peculiar to its needs. Light is purchased by each from the city of Kansas City, Kan. Each insists that it does not require police protection from the City of Kansas City, Kan., though it appears that each plant has at times been visited by the police and fire departments of Kansas City, Kan., for purposes of protection but whether upon the companies' calls or not is not clear. The plant of each is surrounded by a fence which excludes the public from the premises. This is highly desirable, if not necessary, both from the point of view of the public and particularly from the point of view of the Sinclair Refining Company, since the refining of crude petroleum is attended with some degree of danger, and the presence of the public on the premises would be a peril to the property of the Sinclair Refining Company as well as to persons exercising unsupervised access to its premises. Additional peril to the public inheres in the large number of switch tracks and the large amount of switching of cars that is necessary to the carrying on of the business of oil refining. It does not appear, however, that the annexation of the territory covered by Ordinance No. 23,107 will create any probability that the property of either of these two corporations will be encroached upon or the conduct of their business be interfered with in any degree save in the payment of additional taxes that may be levied by the city of Kansas City, Kan. In view of the fact that the plants of the United Zinc and Chemical Company and the Sinclair Refining Company were planned and constructed with a view to each being self-sufficient and independent, it does not appear that either is now deriving any benefit, with its consent, from the city of Kansas City, Kan., except in the matter of water and electrical energy used, as above stated. It appears that the character of the territory immediately adjacent to the plants of the United Zinc and Chemical Company and the Sinclair Refining Company has not substantially changed since the location and erection of said plants.

"In addition to a plan to straighten the western city limits of the city of Kansas City, Kan., it appears that the commissioners of said city had in contemplation the erection of a main sewer through the territory annexed to serve the western part of the Argentine district. It further appears that, because of calls made from this district to the police and fire departments of said city, it was considered as already something of a burden to the city. The city commissioners did, however, have in contemplation the additional taxes from this district that would be collectible by the city of Kansas City, Kan.

"CONCLUSIONS OF LAW.

"The city of Kansas City, Kan., in passing ordinance No. 23,017, acted on authority alleged to have been conferred by section 13-1602 of the Revised Statutes of Kansas, 1923. Whether this ordinance was within the authority conferred by that section is the question presented by this case.

"Section 13-1602 reads as follows: 'Whenever any land adjoining or touching the limits of any city has been subdivided into blocks and lots, or whenever any unplatted piece of land lies within (or mainly within) any city, or any tract not exceeding twenty acres is so situated that two-thirds of any line or boundary thereof lies upon or touches the boundary line of such city, said lands, platted or unplatted, may be added to, taken into and made a part of such city by ordinance duly passed. Said ordinance shall describe the platted lands by giving the name of the addition or subdivision as platted, and by giving the metes and bounds of the unplatted lands, with the section, township, range and county in which the same are located: *Provided,* That in adding territory to any city if it shall become necessary for the purpose of making the boundary line straight or harmonious, a portion of a piece of land may be taken into such city, so long as such portion of the piece taken in does not exceed twenty acres.'

"Counsel for the plaintiffs contend that the ordinance was not authorized by the foregoing section for the following reasons:

"(1) That the territory covered by said ordinance does not lie 'within (or mainly within) any city';

"(2) That it is not an 'unplatted piece of land' within the meaning of said section, but consists of several distinct *pieces of land;*

"(3) That the territory covered by said ordinance, consisting of approximately 640 acres, includes both platted and unplatted land and the annexation, in a single ordinance, of both platted and unplatted land is unauthorized;

"(4) That said ordinance, annexing so large a territory of the character this is shown to be, is invalid because arbitrary and unreasonable.

"Before examining these objections separately, it may be noted, with reference to the statute in question, that the legislature has determined that there are at least four combinations of circumstances under which it is wise that the power of annexation by ordinance should be enjoyed by a city of the first class.

"(1) 'Whenever any land adjoining or touching the limits of any city has been subdivided into blocks and lots.' An owner by subdividing his land into blocks and lots shows that he contemplates and desires that it shall become city property, and if such property adjoins or touches the limits of a city, it enjoys the benefits of a city and there is good reason why such land should be made a legal part of a city. Such must have been the view that led to the enactment of this part of section 13-1602.

"(2) 'Whenever any unplatted piece of land lies within (or mainly within) any city.' In such a case, it is generally the fact that such land is actually and practically a part of the city. Its proximity to a city and its being sur-

rounded or almost surrounded by a city gives it the value of city land and it thus partakes of the benefits of the city. Moreover, such land is generally served by city conveniences, such as light, gas, schools, etc., and, while there would be no duty upon the police or fire departments of the city to serve such land, both of these classes. of protection would generally be enjoyed by land 'within (or mainly within),' surrounded or mainly surrounded by a city. These facts commend as reasonable the provision authorizing the annexation of such land by a city with the consequent result that it may be called upon to bear some part of the city's burdens in return for the benefits enjoyed.

"(3) Whenever 'any tract not exceeding twenty acres is so situated that two-thirds of any line or boundary thereof lies upon or touches the boundary line of such city.' It seems hardly conceivable that, when two-thirds of the boundary of a twenty-acre tract of land lie upon or coincide with the limits of a city, such tract of land would not enjoy practically all the benefits of the city referred to in the preceding paragraph. The legislature might probably have gone further in the extent of its authorization of the amount of such land that could be annexed without authorizing the annexation of land that would not be enjoying, in fact, the benefits of the city. There may be cases where a twenty-acre tract of land, or a smaller tract, having two-thirds of its boundary coinciding with the limits of a city would not lie 'within (or mainly within)' a city, as this language has been construed in cases hereafter to be referred to, but such cases are not easy to imagine. Unless there are such cases, this subdivision of the statutes would be surplusage, the cases to which it is applicable being within the preceding subdivision.

"(4) 'If it shall become necessary for the purpose of making the boundary line straight or harmonious, a portion of a piece of land may be taken into such city, so long as such portion of the piece taken in does not exceed twenty acres.' The justification for this provision is plain. Besides the probability that land so situated would be enjoying substantially city benefits, the city in providing for the disposal of sewage, in furnishing fire and police protection, etc., should not be handicapped by the existence of a gap between two portions of territory which it is under an obligation to serve and from one to the other of which it should in performing its various services, be able to move expeditiously, without interference and with the least economic burden possible.

"These are believed to be the reasons which prompted the legislature of this state to enact the law as it now appears and it is believed that they throw light on the problem presented by the case in hand as to the interpretation which this section should have.

"It is manifest, and counsel agree, that, if the city of Kansas City, Kan., was authorized to annex the territory in question at all it was by virtue of section 13-1602 and particularly subdivision two of that section, as above subdivided. The other subdivisions of the section manifestly have no application.

"The applicable part of the section then reads as follows: . . . Whenever any unplatted piece of land lies within (or mainly within) any city,

. . . said lands, . . . may be added to, taken into and made a part of such city by ordinance duly passed.

"The first question to be answered is whether the territory included by Ordinance No. 23,017 lies 'within (or mainly within)' Kansas City, Kan. It is somewhat irregular in shape and its boundaries are not straight, but they coincide with the boundaries of the City of Kansas City, Kan., on the north, east, south and, to a small degree on the west. Approximately three-fourths of its boundary coincides with that of the city. That territory so situated lies 'within (or manly within)' the city seems to have been clearly the opinion of this court, as will appear by reference to the cases of *State, ex rel., v. City of Atchison,* (1924) 92 Kan. 431, and *State, ex rel., v. City of Hutchinson,* (1921) 109 Kan. 484. Counsel for plaintiffs, however, contend that what was said by this court in these cases on this point was mere dictum. With this contention we cannot agree but, if dictum, it appears to be correct.

"In the Atchison case, the validity of the annexation by the city of Atchison of a sixty-five-acre tract of unplatted land by Ordinance No. 3,096 was challenged. Prior to the passage of that ordinance, Ordinance No. 3,074 had been passed, defining the limits of the city of Atchison. Objection was made to the introduction of Ordinance No. 3,074 as evidence of the boundaries of the city of Atchison as they existed just prior to the passage of Ordinance No. 3,096, on the ground that it did not appear that the law had been complied with in its passage. It was held that, in the absence of evidence to the contrary, Ordinance No. 3,074 would be presumed to be valid, and the legal limits of the city to be as declared therein. But, if the limits of the city were as declared in Ordinance No. 3,074, still the annexation of the sixty-five-acre tract would not be valid under the authority of the statute unless it lay 'within (or mainly within)' the city. The entire boundary of the sixty-five-acre tract measured 7,290 feet and 4,645 feet of its boundary coincided with the limits of the city as declared in Ordinance No. 3,074. The judgment of the lower court holding the annexation valid under the statute was affirmed. This seems to be a clear decision that the land in question lay 'within (or mainly within)' the city of Atchison.

"In the Hutchinson case, the proceeding was against the city of Hutchinson to show by what authority it exercised jurisdiction over the S. E. ¼ and the S. W. ¼ of section 17, etc. It will be observed that the proceedings challenged the authority of the city over each of two different sections of land. The city had exercised authority over the S. E. ¼ for thirty years and it was held that, under these circumstances, it would be presumed, until the contrary was made to appear, that the S. E. ¼ had been validly annexed under Ordinance No. 241, passed in 1890, and was a part of the city. But this did not settle the question as to the city's authority over the S. W. ¼, which had been annexed to the city under Ordinance No. 1,378, passed in July, 1919. Prior to the passage of the last-mentioned ordinance, the land to the north and to the south of the S. W. ¼ had been annexed to the city and, the S. E. ¼ being held to be a part of the city, the boundary of the S. W. ¼ on three of its sides coincided with the boundary of the city and was held to have been properly annexed. The annexation could not have been upheld under the statute without deciding that the S. W. ¼ lay 'within (or mainly within)' the city of Hutchinson.

"In the light of these two cases, it appears that the territory annexed by the city of Kansas City, Kan., under Ordinance No. 23,017, lies 'within (or mainly within)' the city, since it is bounded by the city on three sides, as in the Hutchinson case and the percentage of the coincidence of its boundary with that of the city is greater than what was held to be sufficient in the Atchison case.

"The question whether the territory annexed under Ordinance No. 23,017, is an 'unplatted piece of land' within the meaning of section 13-1602 does not appear to this commissioner to be answered by any decision of this court, nor has his attention been called to any other case which seems to settle it. Omitting, for the moment, the problem raised by the plaintiff as to the effect of the inclusion in the territory annexed of two parcels of platted land, let us confine our attention to the question whether said territory is a 'piece of land' within the meaning of said statute.

"Counsel for plaintiffs argue that the territory here annexed constitutes several 'pieces' of land within the meaning of said statute. It is said that the fact that the Kaw river, a navigable stream, flows through said territory cuts it into two pieces of land at least; that a county road running across it to the west divides it into pieces. It is argued that the lands occupied by the plants of the Sinclair Refining Company and the United Zinc and Chemical Company, each completely inclosed, devoted to widely different uses and so planned and constructed as to be relatively self-sufficient and independent, are separate and distinct pieces of land within the meaning of this statute. Diversity of ownership is also said, under the decisions in this state, to make land separately and diversely owned separate pieces.

"The contention of plaintiff's counsel that the question as to the meaning of 'piece' of land, as it is used in section 13-1602, has been settled by the decisions of the supreme court of Kansas seems clearly open to question. That the problem involved is to ascertain the legislature's intent perhaps all will agree. In its solution, it is pertinent to note that none of the powers of annexation conferred by section 13-1602 is dependent upon the consent of the owner of the land. This constitutes one striking difference between this statute and the California statute under which the case of *People, ex rel., v. City of Le Moore* (1918), 174 Pac. 93, relied on by plaintiffs, arose. In that case, though only 99 persons lived on the 308½ acres annexed, it was clear that this made it inhabited territory. Under the provisions of section 6 of the act of 1913, where different bodies of territory were to be taken in they were required to be submitted to the electors separately. The 308½ acres in question in this case completely surrounded the city of Le Moore, but parcel No. 1, containing 48 acres, as shown by the map in the report of the case, was separated entirely from all the rest of the 308½ acres. The nearest part of the territory taken in to the west of it was 1,650 feet distant, and the nearest part of the territory taken in to the north of it was about equally distant. It is clear that this parcel was a separate body of outside territory and the annexation was invalid under the California law, which required first either a petition of the electors of the existing city or a petition of electors in the territory proposed to be annexed followed by an election. Observe that under this statute the important element in determining whether land outside should be an-

nexed is consent. There is no limitation on the amount or character of land that may be taken in with consent, but the law wisely provides that a proposal to annex should relate to land that has uniformity of character so that an elector could be expected to have a single attitude toward the land. If a thickly-populated, small parcel on the north should be submitted for annexation with a sparsely-populated large parcel on the south, the elector might be confronted with the dilemma of voting either to take in territory that, in his judgment, should not be taken in or of voting against the taking of territory he believes should be in the city. The California statute is so different from the Kansas statute that the case referred to furnishes little or no aid in the solution of the problem here referred to. That this is so will be apparent from the following language in the court's opinion at page 96:

" 'We consider it manifestly unjust and inequitable, under the circumstances described by the complaint, for the electors residing in the two inhabited parcels Nos. 4 and 9 to determine the annexation of the other parcels against the will of their owners.' It would be difficult to imagine two statutes resting upon a more fundamentally different basis. The case of *Linn County Bank v. Hopkins* (1892), 47 Kan. 582, relied upon by plaintiffs as settling the question as to the meaning of 'piece of land,' to this statute, seems hardly in point. That two forty-acre tracts of land, touching only at a corner, are not a single body of land as required by a homestead law, which is never applicable, in a single proceeding, to more than one person, we may all agree, to say nothing of the desirability of strictly construing a law that withdraws a debtor's property from the payment of his just debts. The annexation of property to a city seldom involves the land of only a single person and strong reasons for strict constructions are not apparent.

"As stated above, the fundamental basis of the subdivision of section 13-1602, applicable to the case in hand, is the fact that land that lies 'within (or mainly within)' the city partakes of much of the benefits of the city and is factually, though not legally, a part of the city. It is the conclusion of this commissioner that 'piece of land,' as used in this statute, is not determined by inquiry as to whether a navigable river flows through it or whether certain parts of it are inclosed with high fences or whether it is owned by one or many persons, or whether a county road traverses it, or whether it is thickly populated in parts and vacant in parts, but it seems rather that 'piece' is to be construed with reference to the relation to the city of the land in question. A parcel of land to the north of the city might be almost surrounded by the legal city limits and the same to (be) true of a parcel to the south. We would then have not a piece of land lying 'within (or mainly within)' the city but two pieces of land. They each might be equally eligible for annexation but they should not, under section 13-1602, be taken in in a single ordinance. The land taken in under Ordinance No. 23,017 lies 'mainly within' the city of Kansas City, Kan., and, with reference to its character as being mainly within the city, it is believed that it is a 'piece of land' lying 'mainly within' the city in the sense of being mainly surrounded by the city, which seems to be the meaning that must be given the last-quoted language of this statute, unless it is to be rejected as nonsensical or 'contradictory on its face' as contended by counsel for plaintiff. The latter course this commissioner would be reluctant

to pursue with reference to language to which this court has ascribed a meaning in at least two cases. The result required by the contentions of the plaintiffs that separate ordinances be passed to take in the various pieces of land into which their argument would divide this territory that clearly lies 'mainly within' the city would impose an undue burden to the annexation of this territory without any compensating benefits or protection to anyone. An interpretation of the legislature's language requiring such a result should be supported by a stronger demand in the language used than is found in language of this statute.

"It yet remains to notice plaintiff's argument that section 13-1602 does not authorize the annexation in a single ordinance of territory that includes both platted and unplatted land, even though all of such territory lies 'within (or mainly within)' the city. As heretofore noted and as was suggested by counsel for plaintiffs, a justification for the annexation of platted land exists that may never exist in the case of unplatted land, namely that the owner of such land, by subdividing it into blocks and lots, shows his intent and consent that it shall become city property. If such property lies 'within (or mainly within)' the city all the additional reasons exist for permitting its annexation that led the legislature to provide for the annexation of 'any unplatted piece of land' that 'lies within (or mainly within)' a city, and it would seem that it might frequently happen that a piece, or a part of a piece, of platted land might also come within subdivision three or four of section 13-1602. But it is argued that subdivisions one and two are mutually exclusive and that land that comes within the description of subdivision one cannot come within subdivision two. Counsel for plaintiff would admit that the land that lies north of the Kaw river that is taken in under Ordinance No. 23,017 is not a 'platted piece of land,' within the meaning of subdivision one of section 13-1602, though they argue that the Kaw river makes it a separate piece of land from that included in the ordinance which lies on the south side of the Kaw. It could not correctly be said that the piece of land was platted unless all of it was platted. By the same token, if the position heretofore arrived at that all of the territory covered by Ordinance No. 23,017 is a 'piece of land that lies within (or mainly within)' the city is correct, it must be true that it is an unplatted piece of land. For the purpose of annexation under subdivisions one and two of section 13-1602 but two classes of land are recognized, namely, platted and unplatted. Any platted land may be taken in if it adjoins or touches the limits of a city; it makes no difference whether it lies within or mainly within the city or not, but all of such land must be platted or it is not platted land within the meaning of the statute. The next subdivision was manifestly intended to authorize the annexation of any body of land lying 'within (or mainly within)' the city on the ground that such body of land is factually a part of the city and its becoming a legal part of the city be made possible. That such a body of land happens to have in it some land that has been platted does not change the fact that the body of land lying mainly within the city is factually a part of the city in that it has enhanced value because of its proximity to the city and, because it lies mainly within the city, it cannot escape enjoying much of the benefit of the city in the respects above pointed out. Since a given piece of land, within the meaning of the first and second

subdivisions of section 13-1602, is either platted or unplatted, it must follow that this is an unplatted piece. It certainly could not be taken in under the first subdivision because it is not a 'platted piece of land.' If not, then, since within the meaning of the statute the territory constitutes a piece of land, it must be an unplatted piece of land.

"But if this reasoning should be held to be erroneous, it must be borne in mind that section 13-1602 nowhere says that platted and unplatted land cannot be taken in in a single ordinance. Certainly the taking in together of land that has been platted and land that is unplatted, where all of such lands together make a body of land that is mainly surrounded by the city, would result in the imposition of no burden or danger to the owners of lands included that would not be present if the platted land were taken in in one· ordinance and the unplatted land in another. That the legislature should intend to require the separate annexation of land that lies mainly within the city merely because its owners, in addition to enjoying actually the benefits of ownership of city land, have invited its annexation beggars reason and such a construction of the legislature's language, not seeming to be required, will not be indulged in.

"The plaintiff's contention that the annexation of the territory covered by Ordinance 23,017 is invalid because arbitrary and unreasonable remains to be considered. '

"Whether it is permissible to inquire whether there may not be circumstances which prevent a city from annexing an 'unplatted piece of land that lies within (or mainly within)' a city may be open to doubt. This court, in the case of *In re The Incorporation of the Town of Olsburg, Blue Valley Township, Pottawatomie County et al. v. The Board of County Commissioners of the County of Pottawatomie* (1923), 113 Kan. 501, held that findings of certain facts which, under the statute, were to be ascertained by the board of county commissioners were subject to review by the courts, *e. g.*, the number of inhabitants in the territory proposed to be incorporated; that the petition for incorporation had been signed by a majority of the electors thereof and that a majority of the taxable inhabitants had voted for incorporation. The determination required by the court to be made by the commissioners that incorporations of the territory asked for in the petition was reasonable was in the same case, held to be the exercise of a legislative function and the findings of the board of commissioners on this matter not subject to review by the courts.

"This case seems conclusive upon the point. The legislature has itself determined that it is reasonable to annex property to a city of the first class in at least four different situations. The courts can do no more than determine whether the facts exist under which the legislature has said annexation may take place. These facts have been found to exist in the present case.

"Were it permissible to inquire whether the action of the city in annexing the territory in question was reasonable or arbitrary, it would seem to be clear, from the facts that have been found, that the action of the city is valid. An instructive case, where many of the arguments used by plaintiffs in this case were considered, decided by the supreme court of Missouri, will be found in the case of *State ex inf. Major, Atty.-Gen. v. Kansas City* (1911), 134 S. W. 1007. It was there held that an extension of the city limits of Kansas City, from 26.70 square miles to 57.75 square miles was valid.

"It is the opinion of this commissioner, upon the facts found, that, as a matter of law the action of the city of Kansas City, Kan., was within the authority conferred by sections 13-1602 of the Revised Statutes of Kansas, 1923, and, since the regularity of the passage of the said ordinance was not questioned, the territory covered thereby has been legally annexed to and is legally a part of said city."

We also set out a map of the territory annexed by the ordinance and showing its relation to the previous city boundaries.

We pass by the questions, so far as they are argued or discussed, as to the advisability or prudence of the extension of the city boundaries so as to include the territory in question for the reason that it is a legislative question, with which the courts have nothing to do. (See *Ruland v. City of Augusta,* 120 Kan. 42, 242 Pac. 456, and authorities there cited.) The court will consider only the legal questions involved, namely, whether facts exist which, under the statute pertaining thereto, authorize the city to extend its boundaries by an ordinance so as to include the property in question.

The city of Kansas City is a city of the first class, operating under the commission form of government, as provided in chapter 114 of the Laws of 1907 (R. S. 13-1501 *et seq.*).

The statute (R. S. 13-1601) provides the method of changing the corporate limits of such a city to be by ordinance. Here no question is raised as to the form of the ordinance, or the regularity of its passage.

Of the situations outlined by the statute (R. S. 13-1602), by reason. of which the city may by ordinance extend its limits so as to include additional real property, the one, if any, applicable to the facts in this case, is embodied in the following excerpt from the statute:

". . . whenever any unplatted piece of land lies within (or mainly within) any city, . . . said lands . . . may be added to, taken into and made a part of such city by ordinance duly passed. . . ."

We are first asked to define "piece of land," as those words are used in the statute. Plaintiff argues that a "piece of land" is a tract or parcel of land, the title to which is held separate and apart from other land; that *ownership* alone determines whether or not any given area of land is a "piece of land"; and furthermore that such area of land should be in one body—not separated by a navigable stream, a county road, or by any strip of land the title to which is

21—122 KAN.

in another. From this it is argued that, under the findings in this case, the land sought to be added to the city by the ordinance in question is not a "piece of land," but is in fact many pieces of land, each of which is owned by one who has no ownership in any other. In support of this argument plaintiff cites *Randal v. Elder,* 12 Kan. 257; *Griswold v. Huffaker,* 48 Kan. 374, 29 Pac. 693,. and allied cases, holding that a homestead must consist of one tract or body of land. But neither our constitution (art. 15, § 9) nor our statutes (R. S. 22-102; 60-3501) relating to the homestead, use the words "piece of land." Perhaps it is sufficient answer to all of the argument of plaintiff on this point to say that in granting authority to a city to extend its corporate limits the legislature gave its own definition to the words "piece of land" as being one that "lies within (or mainly within) any city," without regard to ownership. It is true, of course, that the ownership of land has little or no bearing upon the question of whether it should be taken into the city, as it does have upon a question of exemption. Whether the land to be taken into a city is owned by one person, or in separate tracts by many persons, need have no bearing upon the matter. City real property is usually owned in small tracts by many persons, and the fact that land sought to be taken into the city was so owned might be a reason for its being taken rather than a reason for its exclusion. But we do not rest our decision upon this argument; we prefer to place our decision upon what we regard as a proper interpretation of the statute as enacted, viz.; that the legislature, in authorizing the city to extent its boundaries, was not concerned with the ownership of land added to the city, but authorized the city to extend its boundaries so as to include a "piece of land" which "lies within (or mainly with)" the city. In other words, the location of the "piece of land" with respect to the existing boundaries of the city was the controlling thought embodied in the statute.

The land sought to be taken into the city by the ordinance in question "lies within (or mainly within)" the city, as that term was construed in *State, ex rel., v. City of Atchison,* 92 Kan. 431, 140 Pac. 873, and *State, ex rel., v. City of Hutchinson,* 109 Kan. 484, 207 Pac. 440.

Plaintiff calls our attention to the fact that within the piece of land sought to be taken into the city by the ordinance in question are two platted tracts, and hence argues that the land is not an

*"unplatted* piece of land" (R. S. 13-1602). This question is not serious. The platted tracts could be taken into the city by ordinance under the first clause of the statute. If this were done, the remainder of the land sought to be taken into the city by the ordinance in question would be, under the conclusion here reached (even with more reason than now), an unplatted piece of land, and could be annexed by an ordinance. Hence, the only result obtained by following plaintiff's argument would be to require the city to pass two (possibly three) ordinances instead of one. There is no merit to that under the situation here presented; in fact, the statute (R. S. 13-1602) seems to recognize a situation in which both platted and unplatted land may be added to the city in one ordinance.

Lastly, plaintiff argues that the manner in which the city is attempting to exercise the power granted to it by the statute (R. S. 13-1602) is so unreasonable, partial, unfair and oppressive as to result in the ordinance in question being void and unenforceable, invoking the legal principle applied in *City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095, and allied cases. Perhaps a situation could arise for applying this principle to an ordinance extending the limits of a city (*State ex inf. v. Kansas City*, 233 Mo. 162), although the prudence or advisability of extending the corporate limits of a city is a legislative question, not a judicial one. (*Ruland v. City of Augusta*, supra.) But if so, the facts here would not justify its application.

The findings and the conclusion of the commissioner and, in the main, the reasons given by the commissioner for his conclusion, are approved. Judgment will be entered for defendant. It is so ordered.

HARVEY, J., dissenting.