No. 47,377

THE STATE OF KANSAS, *ex rel.*, MARGARET W. JORDAN, District Attorney of the Tenth Judicial District, *Appellee,* v. THE CITY OF OVERLAND PARK, a Municipal Corporation and a First Class City of Johnson County, Kansas, *Appellant.*

(527 P. 2d 1340)

Opinion filed November 11, 1974.

*John L. Vratil,* of Bennett, Lytle, Wetzler & Winn, of Prairie Village, argued the cause for the appellant.

*Margaret W. Jordan,* district attorney, argued the cause, and *Robert C. Londerholm,* of Olathe, was with her on the brief for the appellee.

*Frank A. Bien,* of Topeka, was on the brief of League of Kansas Municipalities as *amicus curiae.*

*Vern Miller,* attorney general, and *John T. Moore,* assistant attorney general were on the brief of state of Kansas as *amicus curiae.*

The opinion of the court was delivered by

FONTRON, J.: This action challenges the validity of a series of annexations to the city of Overland Park, Kansas. The trial court held the ordinances under which the annexations were accomplished to be invalid, and entered judgment in favor of the plaintiff. The city brings this appeal.

For the sake of clarity as well as convenience we shall refer to the appellee as the state, or plaintiff, and to the appellant as the city, or defendant.

Commencing August 16, 1971, and ending August 25, 1971, the governing body of Overland Park enacted eight separate ordinances annexing some 4780 acres of land lying to the south of the city's southern boundary as it then existed.

The ordinances, serially numbered A-643, A-644, A-645, A-646, A-647, A-649, A-650 and A-651, were adopted on eight successive days with this exception: None were passed on August 21 or August 22, which fell on a weekend, and on those days the city fathers took a breather and rested from their labors.

The trial court found the annexation ordinances were adopted pursuant to the provisions of the general annexation act, sometimes referred to herein as the act, which was passed by the Kansas Legislature in 1967. (House Bill No. 1333, L. 1967, ch. 98.) From its history, we understand this act was intended to provide uniform annexation procedures which would apply to all cities, regardless of class, by bringing together and codifying existing annexation laws which up to that time had been something of a hodgepodge. The act appeared in the statute books as K. S. A. 1970 Supp. 12-519 to 526, inclusive, when this lawsuit was commenced and we shall continue to refer to it in that way although now it appears in the 1973 supplement.

In a preliminary way it can be said that § 2 of the act, K. S. A. 1970 Supp. 12-520, sets out seven conditions under which a city may annex land by ordinance, and the governing board of Overland Park, in accomplishing the annexations of August 16-25, 1971, utilized five of them in combination. Except for tract 1 and the larger tract 3, the validity of each annexation was dependent upon the validity of one or more of these which had preceded it. In other words the city proceeded in "boot-strapping" fashion, leapfrogging from one tract to the next.

That the reader may have a clearer understanding of the several annexation moves made by the city, a map has been prepared and made a part of this opinion, showing the configuration of the several areas annexed and their relationship each to the other. The numbers shown on the map indicate the sequence in which the tracts were added to the city's girth. For example, the area marked 1 was the first tract to be annexed; that marked 2 was the second; the two areas marked 3 were added by a third ordinance; area 4 was next in line; the several tracts shown as 5 and those shown as 6 were added next in sequence; and so on to the end, concluding with 8. We will refer to the tracts by these numbers.

The state alleges in its petition that K. S. A. 1970 Supp. 12-519 through 526 is unconstitutional as violating the constitution of the United States and the constitution of the state of Kansas; that the ordinances enacted thereunder are void; and that the statute, even if valid, was unconsitutionally applied in this case.

In a comprehensive memorandum opinion the trial court discussed the legal issues involved and came up with the following conclusions of law:

"The general annexation statute, K. S. A. 1971 Supp. 12-519, et seq., are [sic] unconstitutional as an unlawful delegation of legislative power, *Article 2, Section I, Kansas Constitution,* in that it lacks legislative standards or legislative policy.

"2. The general annexation statute, K. S. A. 1971 Supp. 12-519, et seq., is unconstitutional as it violates the 'Due Process of Law' provision of the Kansas Constitution, the Bill of Rights, and the 'Due Process and Equal Protection Clauses' of the 14 Amendment to the Constitution of the United States.

"3. The general annexation statute, K. S. A. 1971 Supp. 12-519, et seq., is unconstitutional in its use and application in the instant case.

"4. The perimeter provisions of the annexation statute, K. S. A. 1971 Supp. 12-520 (*d*), has [sic] been incorrectly interpreted and applied in the instant case, resulting in an unintended expansion of the power of the city to annex under this single provision.

"5. The perimeter provision of the annexation statute K. S. A. 1971 Supp. 12-520 (*d*), is unconstitutionally vague and indefinite as to meaning.

"6. The annexation Act, K. S. A. 1971 Supp. 12-519, *et seq.,* is contrary to the Home Rule Amendment and is unconstitutional."

It is our opinion that K. S. A. 1970 Supp. 12-519, *et seq.,* does not violate the due process provisions of the federal constitution or the constitution of this state. Many years ago, in *Callen v. Junction City,* 43 Kan. 627, 23 Pac. 652, this court expressed itself this way on the subject:

". . . [T]he change of the *status* of a tract of land from a farm to city lots, by the exercise of a power granted cities to extend their limits, is not a deprivation of property without due process of law. . . ." (p. 630.)

The *Callen* case reflects the generally prevailing rule in this country. In an annotation appearing in 64 A. L. R., Municipal Boundaries—Power to Extend, p. 1335, *et seq.,* numerous authorities are cited at pages 1358 to 1364 supporting the proposition that acts taken extending municipal boundaries are not unconstitutional in the sense of depriving the people in the areas annexed of their property without due process of law.

Perhaps as clear a statement of this point of view as may be found was expressed by the Kentucky Supreme Court in *Lenox Land Co. v. City of Oakdale,* 137 Ky. 484, 489, 125 S. W. 1089, 1091:

". . . [I]t has been repeatedly announced, by this court and others, that the question of due process of law or the taking of property without compensation has no application to the annexation of territory to a municipality. The extension or reduction of the boundaries of a city or town is held, without exception, to be purely a political matter, entirely within the power of the

Legislature of the state to regulate. The established doctrine is that the state Legislature has the unlimited right to pass such laws for the annexation of territory to municipal corporations as in its judgment will best accomplish the desired end, and that a different method may be provided for each class. It may, if it chooses, direct that notice shall be given personally to each individual owner of property sought to be annexed, or that notice by publication shall be given, or that notice by posting copies of the ordinance at any place shall be sufficient, or it may provide that no notice at all need be given. In short, the manner of annexation is entirely beyond the power of the courts to control if the provisions of the statute are followed. . . ." (p. 489.)

In *Wertz v. City of Ottumwa*, 201 Iowa 947, 208 N. W. 511, the plaintiff landowner challenged an annexation statute on constitutional grounds. The Iowa court rejected the challenge and held that the annexation was not invalid either because notice thereof was not given, or because the matter of annexation was not submitted to the electors within the area annexed, or because property in the territory appended might be subject to city taxes.

For additional authority on the due process issue, see 2 McQuillin Mun. Corp. (3rd Ed.) § 4.20; *Kelly v. Pittsburgh*, 104 U. S. 78, 26 L. Ed. 658; *Hunter v. Pittsburgh*, 207 U. S. 161, 52 L. Ed. 151, 28 S. Ct. 40; *State, ex rel., v. City of Kansas City*, 186 Kan. 190, 198, 350 P. 2d 37.

Neither are we impressed with the argument that K. S. A. 1970 Supp. 12-519, *et seq.*, is unconstitutional under the equal protection clause. There is no indication that those who live in the newly annexed areas will pay higher city taxes than do those in other sections of Overland Park, or that they will be subjected to discrimination of any nature. The record before us does not suggest that the new residents of the city will be treated any differently, financially, politically, or otherwise, than are longtime residents of like situations. (See *Taggart, Auditor, et al. v. Claypool*, 145 Ind. 590, 44 N. E. 18.)

In *City of Kansas City v. Railway Co.*, 59 Kan. 427, 53 Pac. 468, the plaintiff challenged an annexation on the theory it discriminated between different classes of real estate owners by exempting farm lands not corporately owned, from its operation, thus depriving persons of their property without due process of law and denying them equal protection. As to these contentions, this court held:

"The statute (section 15, chapter 32, General Statutes 1897), which provides for the extension of city boundaries over certain classes of adjoining lands, is not violative of the Fourteenth Amendment to the Constitution of the United States because it exempts agricultural lands from its provisions." (Syl. ¶ 2.)

In a case arising in Missouri, *Murphy v. Kansas City, Missouri,* 347 F. Supp. 837, the federal court held that residents of unincorporated areas were not denied equal protection because of failure to afford them a right to vote on a proposed annexation plan, even though approval was required from voters living in the city.

A knotty problem is presented in the field of constitutional law by the trial court's finding that the general annexation statute, K. S. A. 1970 Supp. 12-519, *et seq.,* is an unconstitutional delegation of legislative power, since it lacks legislative standards or legislative policy. Article 2, § 1 of the Kansas constitution provides:

"The legislative power of this state shall be vested in a house of representatives and senate."

This court has uniformly held that the power to create municipal or quasi-public corporations is a legislative power and that its exercise is a function of the legislature. (*State, ex rel., v. Drainage District,* 123 Kan. 191, 254 Pac. 372.)

In *Ruland v. City of Augusta,* 120 Kan. 42, 50, 242 Pac. 456, it was said: "The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative—it is not a part of either the executive or judicial branch of the government."

Article 12, § 5, the Home Rule Amendment adopted by vote of the people in 1960, to become effective July 1, 1961, provides in part:

"(*a*) The legislature shall provide by general law, applicable to all cities, for the incorrporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated and cities may be dissolved . . ."

Since early days, Kansas municipalities have been granted authority by the legislature to extend municipal boundaries. In *City of Emporia v. Smith,* 42 Kan. 433, 22 Pac. 616, the city, by enacting an ordinance, annexed a platted tract adjoining the city limits. Mrs. Smith contended that the statute authorizing a city of the second class, such as Emporia, to extend its limits, was unconstitutional. In rejecting this contention, the court stated:

". . . It has long been the law in this state, that the mayor and city council of a city of the second class have the power to extend the limits of the city, to include land adjacent thereto, that has been subdivided into lots and blocks. This power is conferred by a general law, and not by special act, as claimed in this case. No good reason has been given, and we do not believe that a good reason can be given, why the law complained of is unconstitutional." (pp. 435, 436.)

In *State, ex rel., v. City of Overland Park*, 192 Kan. 654, 656, 391 P. 2d 128, we pointed out that "The legislature has absolute authority to create or disorganize municipal corporations. It also has absolute authority to enact provisions by which their boundaries will be increased or decreased."

In the case at hand, the legislature has provided that municipalities may, under certain conditions, extend their boundaries through the medium of adopting ordinances. Those conditions, seven in number, are set forth in K. S. A. 1970 Supp. 12-520:

"The governing body of any city may by ordinance annex land to such city if any one or more of the following conditions exist:

"(*a*) The land is platted, and some part of such land adjoins the city.

"(*b*) The land is owned or held in trust for the city or any agency thereof.

"(*c*) The land adjoins the city and is owned by or held in trust for any governmental unit other than another city.

"(*d*) The land has a common perimeter with the city boundary line of more than fifty percent (50%).

"(*e*) The land if annexed will make the city boundary line straight or harmonious and some part thereof adjoins the city, except no land in excess of twenty (20) acres shall be annexed for this purpose.

"(*f*) The tract is so situated that two-thirds (⅔) of any boundary line adjoins the city, except no tract in excess of twenty (20) acres shall be annexed under this condition.

"(*g*) The land adjoins the city and a written petition for or consent to annexation is filed with the city by the owner.

"The governing body of any city may by one ordinance annex one or more separate tracts or lands each of which conforms to any one or more of the foregoing conditions. The invalidity of the annexation of any tract or land in one ordinance shall not affect the validity of the remaining tracts or lands which are annexed by such ordinance and which conform to any one or more of the foregoing conditions."

In the following section, K. S. A. 1970 Supp. 12-521, provision is made for a city to annex land not conforming to any of the conditions specified in 12-520 by presenting a petition to the board of county commissioners of the county wherein the land is located, which may grant the annexation after hearing.

The seven conditions listed in K. S. A. 1970 Supp. 12-520 have been taken from earlier enactments and consolidated in a single comprehensive statute, consolidation being, as we have earlier indicated, one of the goals hoped to be achieved by adoption of a general annexation act applicable to all classes of cities.

Where, under the statute, annexation may be accomplished by passage of a city ordinance, it would seem obvious that one of the conditions specified in K. S. A. 1970 Supp. 12-520 must be present.

Those conditions constitute limitations on the power of a municipality to annex territory by adopting an ordinance, and they serve as standards which must be observed by a city eager to expand its bounds.

But the state earnestly contends that the statute does not contain the legislative standards or expressions of legislative policy which are required to accompany a delegation of legislative authority. The trial court acquiesced in this view, observing in its memorandum opinion, that the criteria set out in 12-520 are geographical in character only, and not legislative standards of policy.

Our cases recognize that a grant of legislative authority is to be accompanied by adequate standards or guideposts for its exercise. (*State, ex rel., v. Mermis,* 187 Kan. 611, 358 P. 2d 936; *State, ex rel., v. Hines,* 163 Kan. 300, 182 P. 2d 865; *Missouri Pacific Railroad Co. v. McDonald,* 207 Kan. 744, 486 P. 2d 1347.) However, we cannot say that meaningful standards are lacking in the statute with which we are concerned in this case. The conditions set forth in K. S. A. 1970 Supp. 12-520, although they may be termed geographical in the main, establish general patterns of contiguity which must be observed. In this sense at least they do reflect legislative policy.

We deem it of no concern to us that the conditions imposed by the legislature are not of a political, social or economic nature. Matters bearing those labels are of legislative concern, not judicial. This seems clear from what we said in *State, ex rel., v. City of Kansas City,* 181 Kan. 870, 317 P. 2d 806:

"Several arguments may be made to show that the statute imposes a geographical requirement, rather than an economic and sociological one. G. S. 1949, 12-501, *et seq.* provides a method for annexation of adjacent land by city petition to the board of county commissioners which may grant the petition if it finds that annexation is advisable. It is clear that in determining advisability, factors of economic interaction and mutual benefit must be considered. Where the legislature intended such factors to be considered, it declared this intention specifically. In 13-1602a, it indicated no such purpose. . . ."

"Furthermore, use of an economic and sociological test would bring the court into the realm of deciding questions of the advisability or prudence of the extension of a city's boundaries, a function which this court has expressly declared to be legislative in nature. . . ." (pp. 876, 877.)

In *Botsford v. City of Norman,* 354 F. 2d 491, the federal appellate court said:

"It is unquestionably true that the annexation of territory by a municipality is a pure legislative function granted to municipalities by the legislature of the

State. The primary judicial function upon review of this municipal function is to insure that the municipality has acted within the scope of the legislative authority and that such action is reasonable. Discretionary matters involving economic or political considerations are outside judicial cognizance. See City of Bethany v. District Court of Okl. County, 200 Okl. 49, 191 P. 2d 187; 37 Am. Jur., Municipal Corporations, §§ 24 and 25." (p. 494.)

The city insists that our function on appeal is to determine, not the wisdom of enlarging the territorial limits of Overland Park, but whether the city acted within its authority. In *State, ex rel., v. City of Topeka,* 175 Kan. 488, 264 P. 2d 901, we held:

"Cities are creations of the legislature and can exercise only the power conferred by law, they take no power by implication, and the only power they acquire in addition to that expressly granted is that necessary to make effective the power expressly conferred." (Syl. ¶ 2.)

In the case of *State, ex rel., v. City of Overland Park,* supra, this court spoke to the following effect:

"The wisdom, propriety, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. (*State, ex rel., v. Kansas City,* 122 Kan. 311, 321, 252 Pac. 714 and *State, ex rel., v. City of Kansas City,* 181 Kan. 870, 877, 317 P. 2d 806.) The basic function and duty of the courts is to determine whether a city has statutory authority and has acted thereunder in passing an annexation ordinance." (p. 656.)

In *State, ex rel. v. City of Coffeyville,* 211 Kan. 746, 508 P. 2d 1007, it was argued by plaintiff that the annexations involved in that case should be invalidated because, on the next round, the city could do what it theretofore had been unable to do, namely, annex unplatted lands lying between the platted lands annexed by the subject ordinance. We said:

". . . Extension of city boundaries obviously results in more adjacent property being eligible for annexation provided other requisites are met but solution to any problem thereby raised lies in the legislative rather than the judicial arena. The wisdom, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. The basic function and duty of the courts is to determine whether a city has statutory authority and whether it has acted thereunder in passing an annexation ordinance. . . ." (p. 751.)

The trial court included a conclusion of law in its memorandum opinion to the effect that K. S. A. 1970 Supp. 12-519, *et seq.,* was unconstitutional in its use and application. The city takes exception to that conclusion and assigns it, also, as error. The court, in arriving at its conclusion, explained that the statute contains no restrictions as to how often or in what combinations the conditions contained in K. S. A. 1970 Supp. 12-520 could be used; that the same

conditions might be employed repeatedly and in such grotesque combinations as to provide no restraint whatever upon unbridled annexation. The state echoes the same sentiments in its brief.

What we have already said largely disposes of the claim of unconstitutional application. While the annexations accomplished by Overland Park by enactment of the eight August ordinances may appear as stretching its boundaries to extreme limits, especially in view of a prior expansion which, in 1968, added some 20,000 acres of land to the city, still courts are hardly in a position to judge what a city's wants or growth needs may be. Neither should courts speculate or pass on the wisdom of municipal action in those areas, provided the city acts in conformity to legal requirements.

It would appear from the trial court's opinion that judicial notice was had not only of the 1968 annexations, but of other matters as well: such things as the rural character of the land annexed; the location of Interstate Highway 435 and the Johnson County Community Junior College; the existence of unincorporated communities in southeast Johnson County; and of sparsely populated areas already included within the city boundaries. These are matters going to the desirability and the expediency of the present annexations, and they lie in the legislative rather than in the judicial realm.

What was said by this court in *Town of Olsburg v. Pottawatomie County*, 113 Kan. 501, 215 Pac. 451, with respect to incorporation of cities, is deemed pertinent:

"Generally speaking, it may be said that it is the function of the legislative branch of the government to determine what is reasonable, desirable, or for the best interest, and to enact a rule or pass a law concerning those matters; and, generally speaking, it is a judicial function to determine whether or not certain facts establish a situation which brings the parties within the law, and to interpret the law, if need be. . . ." (p. 502.)

The state cites a number of cases in which annexation attempts have been found to violate constitutional guarantees. In large part they represent extreme situations of grossly unreasonable action. For example, in *Batchelder v. City of Coeur D'Alene*, 85 Idaho 90, 375 P. 2d 1001, the annexation would have bisected a landowner's business property, putting part of it inside and part outside the city. In *State ex rel. Davis v. City of Stuart*, 97 Fla. 69, 120 So. 335, the land annexed increased the city area fifteen times and was essentially wilderness with little possibility of development. The situation here is not comparable.

Finally it is contended that K. S. A. 1970 Supp. 12-519, *et seq.*, is

unconstitutional because it violates the provisions of Article 12, § 5, the Home Rule Amendment. The trial court found this to be so. Subsection (*a*) of § 5 reads:

"The legislature shall provide by general law, applicable to all cities, for the incorporation of cities and the methods by which city boundaries may be altered, cities may be merged or consolidated and cities may be dissolved: *Provided,* That existing laws on such subjects not applicable to all cities on the effective date of this amendment shall remain in effect until superseded by general law and such existing laws shall not be subject to charter ordinance."

The argument is that the general annexation act is not a general law applicable to all cities because its provisions are made alternative to other existing statutory methods for annexation of territory. Section 7 of the act (K. S. A. 1970 Supp. 12-525) reads:

"This act is alternative to any other statute prescribing method and procedure of annexation by cities. Any city may annex under this statute or any other statute applicable to such city."

The possibility that a conflict might exist between Section 7 of the act and the Home Rule Amendment was mentioned by Senator Robert F. Bennett in his report "1967 Legislature—Statutory Changes of Interest to Lawyers," cited by Wright W. Crummett, City Home Rule in Kansas, 9 Washburn Law Journal, p. 10. Nonetheless, we believe that the state's argument is not valid. Assuming for the sake of argument that there is a conflict, we think it may be cured by severing 12-525 pursuant to the severability or savings clause (K. S. A. 1970 Supp. 12-526), which reads:

"If any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section."

In our opinion the trial court erred in not separating 12-525 from the rest of the act. The severability rule has been given general acceptance by this court. In *Voran v. Wright,* 129 Kan. 601, 284 Pac. 807, we stated:

"Where parts of a statute or section thereof can be readily separated, that part which is constitutional may stand while that which is unconstitutional will be rejected." (Syl. ¶ 6.)

The rule is qualified by the principle that where the void and the valid parts of a statute are so interconnected that they cannot be separated without doing violence to the legislative intent, the statute as a whole must fall. (*State v. Smiley,* 65 Kan. 240, 69 Pac. 199; *State, ex rel., v. Consumers Warehouse Market,* 185 Kan. 363, 343

P. 2d 234.) In our opinion, K. S. A. 1970 Supp. 12-525 may be excised from the statute without doing violence to legislative intent and without destroying the general purpose of the act, which was to gather into a comprehensive statute, applying to all cities, the annexation statutes theretofore scattered throughout the books relating to cities by class.

We might say at this time that sections 12-525, as well as 13-202, 13-1602a and 14-447, have been repealed, so the constitutional issue posed by the Home Rule Amendment is presently moot.

In the final analysis we are constrained to reject *in toto* the view advanced by plaintiff that K. S. A. 1970 Supp. 12-519, *et seq.*, is constitutionally impermissible. Our latest expression on this point appears in *State, ex rel. v. City of Coffeyville*, supra, where we say:

"Lastly, appellant urges that ordinance No. 5515 is unconstitutional on its face and in its application. . . . No infirmity appears in the ordinance and more need not be said. The trial court specifically upheld the constitutionality of the statutes in question and no further challenge to that legislation is made upon appeal." (pp. 752, 753.)

We now reach another serious part of this lawsuit, *i. e.*, the construction of K. S. A. 1970 Supp. 12-520 (*d*). It will be recalled that subsection (*d*) contains one of the seven conditions under which the governing body of a city may annex land by enacting an ordinance. Under this subsection, land may be annexed by ordinance where "the land has a common perimeter with the city boundary line of more than fifty percent (50%)."

The trial court reached two conclusions with respect to this section: (1) The perimeter provisions were incorrectly interpreted and applied leading to an unintended expansion of the power of a city to annex land and (2) the perimeter provision was unconstitutionally vague and indefinite.

Basically, the dispute between the parties simmers down to this: The plaintiff contends that the land having a common perimeter with the city boundary of more than 50% means land which is within or mainly within the city, while the defendant argues that the land need not be circumscribed by the city; that it is sufficient if the perimeter be common to two sides of the city boundary, as in the case at hand. It thus becomes important to determine the context in which the term "perimeter" is used in K. S. A. 1970 Supp. 12-520 (*d*).

As the trial court points out, "perimeter" may be used in more than one sense. We believe, however, it ordinarily connotes en-

circlement; embracement; surrounding; enclosure. Webster's New International Dictionary, Third Edition, defines the term as (1): the boundary of a closed plane figure (2): the measure of the boundary of a closed plane figure; . . . a line or strip bounding or protecting an area; outer limits. Roget's Thesaurus of English Words and Phrases, St. Martin's Edition, lists as synonyms for "perimeter": circumjacence; outline; enclosure; surrounding.

Not only do we nurture the opinion that the statute uses "perimeter" in the sense of enclosing or surrounding, but that the legislature intended that it be used in that context.

It is a primary rule of statutory construction that legislative intent be ascertained wherever possible. (*Denton v. West,* 156 Kan. 186, 131 P. 2d 886.) In attempting to discover legislative intent, as it relates to a statute, we are not bound to an examination of the language alone but may look into the existing conditions—the causes which impelled its adoption and the objective sought to be attained. (*Perkins v. Lenora Rural High School,* 171 Kan. 727, 731, 237 P. 2d 228.) In *City of Emporia v. Norton,* 16 Kan. 236, Mr. Justice Brewer, in speaking for the court, said:

". . . Now in determining the intent of the legislature we are not limited to a mere consideration of the language employed. We may properly look to the purposes to be accomplished, the necessity and effect of the enactment under the different constructions suggested. . . ." (p. 239.)

Moreover, the law seems well established that the historical background of a legislative enactment, and the circumstances attending its passage, should be taken into account. (*Duggan v. Navart,* 198 Kan. 637, 426 P. 2d 153; *Curless v. Board of County Commissioners,* 197 Kan. 580, 419 P. 2d 876; *State v. Momb,* 154 Kan. 435, 119 P. 2d 544.)

For many years certain cities were empowered by statute to annex unplatted pieces of land lying or situated "within or mainly within" the city by the simple expedient of passing an ordinance. See, for example, K. S. A. 13-202, K. S. A. 13-1602, K. S. A. 13-1602a and K. S. A. 14-447. In 1965, as this court recently pointed out in *State, ex rel., v. City of Coffeyville,* supra, the legislature directed the Legislative Council to conduct a study of annexation laws and recommend legislation for consideration at the 1967 session. The council asked the League of Kansas Municipalities (herein called the league) to assist in that project, and to draft suggested legislation applicable to cities of every class. Complying with the request, the league submitted a proposed draft which the council recom-

mended to the legislature. The council report was made under the title "Proposal Number 11, House Bill No. 1333." The bill was enacted into law during the 1967 session, with amendments not material here. Since its adoption House Bill 1333 has appeared in succeeding annual supplements to Kansas Statutes Annotated as sections 12-519, *et seq.*

Perhaps the most significant bits of legislative history appear in Proposal No. 11 and in the General Explanation of House Bill No. 1333 and Notes on HB 1333 prepared by the league. The notes are accompanied by a footnoted copy of the bill. These documents are source materials to which reference may be had to ascertain legislative intent under the rationale of *Harris v. Shanahan,* 192 Kan. 629, 390 P. 2d 772, where this court had recourse to studies of the council's research department, an arm of the legislature itself, we said.

In commenting on the general provisions of House Bill No. 1333, the council stated:

"(2) General annexation by ordinance is authorized in such cases as: (*a*) land is platted and adjoins city, (*b*) land is held in trust or owned by city, (*c*) land has a common perimeter with the city boundary line of more than 50 percent, (*d*) land adjoins city and if annexed will make the city boundaries harmonious and straight (limit of 30 acres), (*e*) tract is so situated that ⅔ of any boundary line adjoins the city (limit of 30 acres) and (*f*) land adjoins city and the owners petition for annexation. *These categories are not new but are essentially a rewording of a section found in the current statutes.*" (pp. 56, 57.) (Emphasis supplied.)

The league, in explaining the provisions of House Bill No. 1333, relates that it was asked to submit a draft of an annexation law applicable to all cities and that, in general, it tried to develop a uniform annexation procedure which would apply to all cities. Footnotes 19 and 20 (of the notes) refer to what is now K. S. A. 1970 Supp. 12-520 (*d*). As we have heretofore pointed out, 12-520 lists seven conditions under which land may be annexed by ordinance. The fourth condition (*d*) is where "the land has a common perimeter with the city boundary line of more than fifty percent (50%)."

Footnote 19 reads:

"The term 'land' shows the property subject to annexation is not limited by ownership. *This is existing law.* K. S. A. 13-202 provides, 'whenever any unplatted piece of land lies within, or mainly within. . . .' K. S. A. 13-1602 and 13-1602a both provide 'whenever any unplatted piece of land lies within (or mainly within). . . .' K. S. A. 14-447 provides, 'any lands

situated within (or mainly within). . . .' The supreme court in State, ex rel., v. Kansas City, 122 Kan. 311 held that the words, 'piece of land' in 13-1602 did not require that annexation depend upon ownerships. 'It may be in one tract with one owner, or it may be in many tracts with as many owners,' syllibus [sic] 1, page 311." (Emphasis supplied.)

Footnote 20:

"*This is existing law.* The phrases presently used are set forth in footnote 19 and consist generally of 'within or mainly within.' In State, ex rel., v. City of Kansas City, 181 Kan. 870, 876, the supreme court defined the term 'mainly within' as land which has a common perimeter with the city of more than fifty percent (50%). Obviously, if land meets the definition of 'mainly within' there is no need to look further to see if it is 'within' or surrounded; therefore this unnecessary portion of the existing law is removed." (Emphasis supplied.)

In our opinion the legislature did not intend to change procedures for annexing unplatted land. "These categories", the council said in Proposal No. 11, referring to the categories now delineated in K. S. A. 1970 Supp. 12-520, "are not new but are essentially a rewording of a section found in the current statutes." "This is existing law" the league explained in Footnotes 19 and 20. "Existing law" at that time, as it was outlined in at least four Kansas statutes, was simply this: unplatted land could be annexed by ordinance if it was "within" or "mainly within" the city.

It is true that in Footnote 20, the league commented that in *State, ex rel., v. City of Kansas City,* supra, this court "defined the term 'mainly within' as land which has a common perimeter with the city of more than fifty percent (50%)." "Obviously," the league continued, "if land meets the definition of 'mainly within' there is no need to look further to see if it is 'within' or surrounded; therefore this unnecessary portion of the existing law is removed."

The quotation itself is not entirely accurate, but more important, it is taken out of context. What Justice Wertz wrote in the *Kansas City* case was this:

"The word 'within' has been defined as 'being inside the limits of.' (Ballentine's Law Dictionary, 2nd Ed., p. 1367; 97 C. J. S. Within, p. 330.) The word 'mainly' has been defined as 'principally,' 'chiefly,' 'in the main.' (38 C. J. Mainly, p. 334; 54 C. J. S. Mainly, p. 897.) If 'within' means surrounded 'mainly within' a city would mean that a common perimeter of more than fifty percent was present. To impute any other meaning would obliterate any distinction between the test for annexing platted (such as adjoining or touching) and unplatted lands. Unquestionably, the legislature intended a distinction." (p. 876.)

What concerned the court in that case was the meaning of "within" and "mainly within" as those words pertained to the un-

platted land which Kansas City was then attempting to annex. In other words, was that land "mainly within" the city by virtue of its being mainly enclosed or surrounded by a perimeter, more than fifty percent (50%) of which coincided with city boundaries? The perimeter test of fifty percent (50%) or more was applied to the facts of that case, and the perimeter of the area under discussion simply came up short. Mr. Justice Robb was perfectly aware of what the majority opinion meant when, in dissenting, he said: ". . . to my way of interpreting the majority opinion, it says 'within' means 'circumscribed' and 'mainly within' means 'over 50% circumscribed.' "

It is pertinent to point out that the boundaries of Kansas City, as shown by a map of the Fairfax industrial district, found on page 704 of the opinion in *State, ex rel., v. City of Kansas City*, 169 Kan. 702, 222 P. 2d 714, extended toward and intercepted both sides of a loop of the Missouri river with the river forming some sixty-five percent (65%) of the perimeter of the area sought to be annexed.

Similarly, in each of the three cases cited by Justice Wertz in connection with his reference to "perimeter" (*State, ex rel., v. City of Atchison*, 92 Kan. 431, 140 Pac. 873; *State, ex rel., v. City of Hutchinson*, 109 Kan. 484, 207 Pac. 440; *State, ex rel., v. Kansas City*, 122 Kan. 311, 252 Pac. 714), the territory involved was bordered by the city on three sides and thus was mainly within or circumscribed by the city. We should like to quote a portion of the commissioner's report filed in the *Kansas City* case just noted as being pertinent to our present discussion:

" '. . . [T]he fundamental basis of the subdivision of section 13-1602, applicable to the case in hand, is the fact that land that lies "within (or mainly within)" the city partakes of much of the benefits of the city and is factually, though not legally, a part of the city. . . . The land taken in . . . lies "mainly within" the city of Kansas City, Kan., and, with reference to its character as being mainly within the city, it is believed that it is a "piece of land" lying "mainly within" the city in the sense of being mainly surrounded by the city, which seems to be the meaning that must be given the last-quoted language . . .' " (p. 318.)

We believe it is of some significance that after the present lawsuit was commenced and this appeal was taken, the legislature at its 1974 session reinstated the phrase "lies within or mainly within the city" so that 12-520 (*d*) now reads:

"The land lies within or mainly within the city and has a common perimeter with the city boundary line of more than fifty percent (50%)."

It is not unreasonable to assume this legislative action was prompted by the defendant's attempt in this case to use the statute in a manner not intended. We believe it must be concluded that when all past and present annexation statutes are construed together against their common background, they have presented a consistent pattern indicating that before unplatted lands or more than twenty acres may be annexed by city ordinance they must lie within or mainly within the city.

From looking at the map reproduced herewith, we think it clear that tracts 4, 7 and the largest tract 6, all annexed under K. S. A. 1970 Supp. 12-520 (d) were not lands *within or mainly within* the city of Overland Park when they were annexed. Those tracts, it is true, were bounded by the city on two sides, at the time of their annexation, but it would be startling to say they were *enclosed, embraced or surrounded* by the city in any common, ordinary or accepted sense. Encirclement or enclosure would seem to be most difficult to achieve by using only two sides of a square or rectangle. As we view the bounds of the foregoing tracts, they comprise territory extending or protruding from, not located mainly within, the city of Overland Park. Hence, we conclude their annexation was invalid.

What, then must be the final outcome? We specifically hold:

1. The foregoing tracts (4, 7 and the largest tract 6) were not legally annexed under ordinances A-646, A-650 and § 5 of A-649 for the reasons assigned in this opinion. Tract 7 and the largest tract 6 are void for the additional reason that their validity depended on the legality of the annexation of tract 4.

2. Tracts shown on the map by numbers 1, 2 and 3 were legally annexed to Overland Park by ordinances A-643, A-644 and A-645, and

3. The annexation of all the remaining tracts (numbered 5, 6 and 8) attempted by ordinances A-647, §§ 1, 2, 3 and 4 of ordinance A-649 and A-651 are invalid because their legality depended upon the validity of the prior attempted annexation of tract numbered 4.

The judgment of the trial court must be reversed with directions to enter judgment upholding the annexation of the tracts described in ordinances A-643, A-644 and A-645; that part of the trial court's judgment decreeing annexation of the remaining tracts to be void, is sustained.

It is so ordered.